## Coleman v. Louisville & Nashville Railroad Company.

· (Decided December 14, 1920.)

### Appeal from Pendleton Circuit Court.

1. Waters and Water Courses—Overflow—Measure of Damages.— Where a permanent obstruction is erected by a railroad company in a river which caused the water to overflow the lands of another, the measure of damages to which the landowner is entitled is the difference in the reasonable market value of the lands immediately before the obstruction was placed in the river and immediately thereafter.

2. Waters and Water Courses—Damages—Cause of Action.—In such case a plaintiff can have but one recovery, for he must sue for all damages past, present and prospective or contingent, and his cause of action accrues when the structure is completed, or at least when first injury is occasioned.

M. C. SWINFORD and A. H. BARKER for appellant.

L. T. APPLEGATE, C. D. IHRIG and BENJAMIN D. WARFIELD for appellee.

OPINION OF THE COURT BY JUDGE SAMPSON—Affirming.

In the construction of its double track along the east side of the South fork of Licking river in Pendleton county, the Louisville & Nashville Railroad Company

dumped a lot of stone and dirt into the river, making several large obstructions which caused the water in the river in ordinary freshets to overflow in part the lands of J. W. Coleman lying on the west side of the river. The road was constructed in 1911, 1912 and 1913, and some time after the obstructions were placed in the river the water was caused to overflow the lands of Coleman in such way as to destroy his crops, and the railroad company acknowledging its liability compromised with him and paid hm $375.00 in damages. In the spring of 1917 water again overflowed the lands of Coleman destroying his crops and he brought this action against the company to recover damages therefor in the sum of $700.00. The railroad company answered denying the allegations of the petition but pleading in a second paragraph that the obstructions in the river were made necessary in the construction of the road and that they could not be removed without great expense and the destruction of the roadbed, and further "that whatever injuries, if any, plaintiff has sustained by reason of said construction are permanent injuries; that the defendant is entitled to have plaintiff set up all his said injuries in this action or be forever thereafter estopped from so doing." Thereupon the plaintiff Coleman filed an amended petition alleging in substance that the railroad was constructed between the years 1911 and 1915, and that it had willfully, wantonly, unlawfully, recklessly, negligently and carelessly, through its agents and employes, at various and sundry times, piled rock, dirt, trees, stumps, ties and various other hard substances into the said river in such way and manner as to obstruct the flow of the water and to divert it from its natural channel in ordinary freshets and to overflow the lands of plaintiff which overflow had washed and greatly deteriorated his lands and destroyed thirty-five acres thereof and certain crops. He prayed damages in the sum of $3,500.00. Issue being joined a trial was had, the jury returning a verdict for $500.00 in favor of Coleman, and he being dissatisfied with the verdict and judgment entered thereon, appeals to this court assigning as grounds for a reversal: (1) Error of the court in permitting incompetent evidence to be heard which was to the prejudice of the plaintiff and in refusing competent evidence offered by the plaintiff; (2) because the court erred to the prejudice of plaintiff in its instructions to the jury. It is admitted by both parties that the ob-

structions in the river and the embankments erected by the railroad company are of such nature as to be permanent and the injury to the lands of plaintiff are and were of a permanent and lasting nature.

With respect to the first complaint of appellant he states in his brief that the trial court in the beginning of the introduction of the plaintiff's evidence concerning the extent of the damages suffered by Coleman ruled that the evidence must be directed to the value of the lands after it was discovered that the dumps caused the lands to overflow and that this discovery was made in 1915, whereas this action was filed in 1917 and the amended petition in 1918, and the trial had in 1919.

The gist of this complaint is that the trial court required the plaintiff Coleman to confine his evidence to the value of the land immediately before the obstructions were placed in the river and immediately after the obstructions were discovered to be of such size and nature as to divert the water from the natural channel of the river and cause it to overflow the plaintiff's lands.

It is a well settled principle of law governing in cases of this kind that where the structure which obstructs the flow of the water and casts it upon the lands of the plaintiff is permanent in its nature, the plaintiff can have but one action—one recovery—for he must sue for all damages, past, present and prospective or contingent, and that the cause of action accrues when the structure is completed, or at least when the first injury is occasioned to plaintiff's property, and the measure of damage is the difference in the market value of the lands before and after the injury. Board of Park Commissioners of City of Louisville v. Donahue, 140 Ky. 502, 21 R. 873; Kentucky Lumber Co. v. King, 65 S. W. 156; Illinois Central R. R. Co. v. Smith, 110 Ky. 203, 30 R. 1239; Pickerell v. City of Louisville, et al., 100 S. W. 873; Louisville & N. R. R. Co. v. Ponder, et al., 104 S. W. 279; 17 Corpus Juris, pp. 1039 and 1040; 8 R. C. L., pp. 539, 540 and 542.

As the obstructions were placed in the river before the year 1915, and were of a permanent and lasting nature, and the water was caused to and did overflow the lands of plaintiff causing damage about that time, it follows the trial court properly required Coleman to confine his evidence to the value of the lands immediately before the obstructions were placed in the river and the value of the lands immediately thereafter, and

after it was manifest that the obstructions, permanent in their nature, would divert the water of the stream from its regular course and cast it upon the lands of plaintiff and this water would deteriorate the lands and destroy the growing crops. Of course, the court properly allowed Coleman to show that his crops were destroyed in the spring of 1917, as this was a part of the damage incurred, but this does not alter the rule that the measure of damage to real property from an overflow of water caused by a permanent structure is the difference between the reasonable market value of the lands immediately before and immediately after the completion of the structure and the occasion of the first overflow resulting therefrom.

Appellant urges a reversal of the judgment because the court improperly allowed the defendant company to prove the sale price of other lands contiguous to that of the plaintiff as far back as 1914.

As a general rule it is improper to admit evidence in chief of the amount for which adjoining tracts of land were sold as bearing upon the value of the land of plaintiff. But when the lands are of a similar nature and in the same vicinity a sale had at not too remote a time may be shown to aid the jury in determining the market value of the property under consideration. At any rate, we do not think that the evidence introduced in this case concerning the sale price of contiguous property nor of lands in that vicinity was prejudicial to appellant Coleman. 17 Corpus Juris 1040.

Perceiving no error to the prejudice of appellant the judgment is affirmed.