## Norfolk & W. Ry. Co. v. McCoy et al.

Nov. 28, 1941.

William R. McCoy for appellant.

Jasper H. Preece and W. H. D. Preece for appellees.

OPINION OF THE COURT BY MORRIS, COMMISSIONER— Reversing.

This is the fifth appearance of the above-styled appeal, as is shown by reference to opinions reported in 250 Ky. 190, 61 S. W. (2d) 1080; 257 Ky. 32, 77 S. W. (2d) 392; 265 Ky. 653, 97 S. W. (2d) 571; 276 Ky. 573, 124 S. W. (2d) 777; the first was handed down more than seven years ago. In each case we reversed because we concluded that the amount awarded was grossly excessive. The first and second judgments were for $1,787.08; the third $2,591.27, and the fourth $1,654.32. The judgment on the fifth trial was for $1,200.

The facts as to the manner in which the fill was constructed along appellant's tracks on the opposite side of Tug Fork of Big Sandy, which caused tide waters to overflow approximately three acres of bottom land of Hi McCoy, are fully given in the former opinions. There is one point raised here which could not have been presented on any of the former appeals. The first four actions were prosecuted in the name of the then owner of the land. The fourth judgment, 276 Ky. case, was on August 17, 1937. Our opinion was rendered in 1939; mandate was filed in the trial court in May, 1939.

Before the last trial, Mary McCoy, widow of Hi McCoy, and the three children, filed amended petition in which they suggested that Hi McCoy died intestate in January, 1939. They plead that the action was pending at that time; that they were respectively the widow and only children of Hi McCoy, and under the laws of descent "they became the owners of the lands described in the original petition." They asked that the pending action be revived in their names on the ground that as owners they were entitled to damages originally claimed. They later moved the court to revive and the motion was sustained over objection. Later defendant (appellant) filed an answer which denied the allegations of the amended pleading, alleging that if it be true that the new parties were the owners of the land, they as heirs-at-law were not entitled to revive or maintain action seeking to collect damages for injury to the land, since any damage, if done, was prior to the death of the original owner. There was no response to this pleading, and appellant insists that it was entitled to a peremptory instruction because of the failure to respond.

We deem it unnecessary to determine this question, but are of the opinion that the court should have sus-

tained objection to the entry of the order, or later sustained appellant's motion to strike the amended petition and set aside the order of revival.

Under the common law there was no right of revival of a suit seeking redress for personal injuries, or injuries to property. This was true until the law was modified by statute (4 Edw. 111-Ch. 7). A modification of the common law was carried into our Statutes in 1797, (1 Litt. 624) which provided that "actions of trespass may be maintained by and against executors or administrators for any goods taken and carried away in the lifetime of the testator or intestate; and the damages received shall be, in the one case, for the benefit of the estate, and in the other out of the assets." Kennedy and McCoun v. McAfee's Ex'x, 1 Litt. 169, 11 Ky. 169.

In 1811 (Acts 1811, p. 182) the legislature again approached the question and in substance provided that "no species of action for personal injuries shall die with the person," excepting certain actions named, "but for any injury other than herein excepted, an action may be maintained by or against personal representatives in like manner with causes of action founded upon contract." It was further provided that upon the decease of either plaintiff or defendant to any actions which by the provisions of the act "will not die with the person, it shall be lawful for such action to be revived in the name of the personal representative."

We need not undertake to specifically trace the history of our statute. The statute of 1812, 1 M. & B. p. 88, did not include the right to maintain or revive an action after death for injury to real estate. This was carried into the Act of 1842, 3 Stat. Law of Ky. (Loughborough) p. 573, and is carried into our statute, Section 10, St. 1936, in the following language:

"No right of action for personal injury or injury to real or personal estate shall cease or die with the person injuring or injured, except * * * but for any injury other than those excepted, an action may be brought or revived *by* the personal representative, or *against* the personal representative, heir or devisee, in the same manner as causes of action founded on contract."

The italicized words, supra, indicate the difference in remedy and procedure. We need not undertake to

give reason or grounds for the differentiation. It may be that the law-making body had in mind a cause of action which had accrued, but not commenced, or had been begun prior to the death of the person injured, and in some cases the estate, or portions of it, had been distributed prior to the beginning or revival of the litigation, in which case, quite consistently, the distributees would be proper if not necessary parties. However, we must construe the section as we find it.

The general rule as to survival is that actions whether in contract or tort, survive *to* and *against* the personal representative. Causes of action which may be called real actions, relating to title or possession and use of real property, may ordinarily pass to the surviving heirs. But there are exceptions where there is merely an injury to real property.

> "For instance, a cause of action to real property by a nuisance accruing in the lifetime of the owner survives to his personal representative, not his heirs." 1 Am. Jur. p. 103, Section 156.

Our statute makes the general rule absolute, and it must control. City of Seymour v. Cummins, 119 Ind. 148, 21 N. E. 549, 5 L. R. A. 126.

The statute in question was remedial. It was originally passed to extend a right not allowed by the common law, later modified so as to give the right of revival in actions for injuries to property, in addition to actions for specific personal injuries. As now appearing in the statute, it not only gives a right and provides a remedy, but it names those who have the power to exercise the right and follow the procedure. It is a well-known rule of statutory construction that a remedial or curative statute, which grants a right or provides a remedy, must be strictly followed in all respects. Com. v. Glover, 132 Ky. 588, 116 S. W. 769; Hurry Up Broadway Co. v. Shannon, Auditor, 267 Ky. 302, 102 S. W. (2d) 30.

Applying this rule we cannot escape the conclusion that the right of revival of the instant action rested in an administrator, since it appears the original owner died intestate. Counsel does not insist that the action was abated, but that the revival was not attempted in the name of a personal representative; we think the position well taken and the order of revival should have been set aside.

Appellant insists that there was prejudicial error in the giving of instructions, in that the jury was nowhere told whether their finding should be based on damages done by a temporary or permanent structure. The measure of recovery in the two classes of cases has been so often and clearly set out in many of our older and more recent opinions that it is not necessary to repeat the rules; they are enunciated in Chesapeake & O. R. Co. v. Caudill, 270 Ky. 107, 109 S. W. (2d) 20, and cases cited therein.

The first instruction merely charged that if the jury believed from the evidence that plaintiffs are the owners of the land involved, and that the defendant changed by its acts the natural flow of the river onto plaintiff's land, causing it to wash and erode, they should find for plaintiff, otherwise for defendant. While this instruction may not have been couched in the best terms, it appears to have substantially followed the one approved by this court in Louisville, H. & St. L. R. Co. v. Roberts, 144 Ky. 820, 139 S. W. 1073.

However, in fixing the measure of damages the court did not give a clear or correct instruction. The jury was told that if finding for the plaintiff, "then the measure of damages that plaintiffs are entitled to recover, is the diminution in the fair market value of the land caused by the diversion of the water, so that the sum so found shall not exceed $1,800." This amount was fixed by an amended petition following the second remand of the case.

It is evident from all the pleadings, and from proof introduced, that all parties treated the structure as being one of permanent nature. All the proof of plaintiff, as to measure, was based on the fair market value of the land before the construction of the fill, and its value "immediately" following construction. The questions asked all witnesses for the plaintiff evinced what they considered to be the true measure, but the court's instruction left the matter open so that the jury might consider the value of the land at some later period.

The instruction is all the more objectionable due to certain questions propounded to witnesses, and answers given, which brought out proof as to the effect of the current of the river, and further damage accruing long after the institution of the suit, and even after the

fourth trial. Such evidence would have been proper if plaintiff had pitched his case on damage caused by a temporary structure. It may be that the court conceived that the action was based on injury resulting from a temporary structure. If he had any doubt, then the instruction should have left to the jury the character of structure, under all the proof. Louisville, H. & St. L. R. Co. v. Roberts, 144 Ky. 820, 139 S. W. 1073, 1074.

The error was perhaps due to the fact that in 1937 plaintiffs filed an amendment setting up the fact that since the suit was instituted, more land had been washed away. This was, as far as we observe, by going to former records, without objection by appellant. However that may be, when the witnesses were testifying for plaintiff as to damage, they undertook to detail more recent floodings, and consequent change, but the court by admonition to the jury (in one instance only) confined consideration to such floodings as had occurred prior to the date of amendment.

In Coleman v. Louisville & N. R. R. Co., 190 Ky. 17, 226 S. W. 360, 361, we held that the trial court properly confined the evidence of the value of the land immediately before and after the placing of obstructions in the river, where it was manifest that the obstruction was permanent. It was further held that plaintiff could show damage to his crops in a first or second succeeding year, "but this does. not alter the rule that the measure of damage to real property from an overflow of water caused by a permanent structure is the difference between the reasonable market value of the lands immediately before and immediately after the completion of the structure and the occasion of the first overflow resulting therefrom."

While it may have been proper to show the extent of the damage caused in years following the original construction and first overflow, in considering the question of differences in value at the fixed times, yet it was the duty of the court, in the instant case, to limit recovery to the difference in values just before and immediately after the building of the structure, when it was observed that there was or would be injury by reason of the building of the structure.

In this respect the instruction was erroneous, for the reason that the jury might have considered recurring.

loss or injury in reaching their verdict, without limitation as to time. The correct rule as to all classes of cases of this character is laid down in Chesapeake & O. R. Co. v. Caudill, supra. We are of the opinion that the instruction on measure of damages was not the correct rule and was prejudicial.

We cannot refrain from comment on the contention that the verdict was excessive. While it was lower, by approximately $400, than the last previous verdict, it strikes us as still being excessive. We need not repeat reasons for our conclusions, since they appear in former opinions. In the instant case the proof was to all intents and purposes the same as on former trials. There was some slight difference, but this existed by reason of the fact that certain witnesses raised or lowered the value before the injury, and in like proportion after the injury. The general trend is the same, and we fail to note such differences in proof as would lead us to a conclusion that the verdict was not too great.

In the last case, 276 Ky., we showed the then owners listings for assessment for several years, from 1925 to 1933, with several years missing, at figures ranging from $300 to $400; the boundary up till 1930 contained 54 acres. In that year 15 acres were sold to another party. It might be reasonable to conclude that after the damage was sustained, the listing value may have been lessened, but it appears that in 1920 the land (54 acres) was listed at $548; in 1925, $306, and in 1927 (after construction) $307.

We note also in proof before us, and not particularly noted in the other opinions, that there was proof by several witnesses, one being a man who had sold Mr. McCoy a portion of the land, that the fair value of the entire tract prior to the construction, ranged from $12 to $15 per acre, and these witnesses were of the opinion that the structure had not caused any depreciation in value. However this may be, or may affect our minds, we once more, and we trust finally, express the opinion that the verdict was excessive, and if no other reason for doing so appeared, we would reverse on that ground alone.

Judgment reversed for proceedings consistent with the foregoing.