REVENUE CABINET, COM-
MONWEALTH Of KEN-
TUCKY, Appellant,

v.

CSC OIL COMPANY, INC.; and Transit
Oil Company, Inc., Appellees.

No. 92–CA–626–MR.

Court of Appeals of Kentucky.

April 16, 1993.

Debra Hays Eucker, Frankfort, for appellant.

Virginia Collins Burbank, Wynter Reneaux Collins, Louisville, for appellees.

Before LESTER, C.J., and GUDGEL and WILHOIT, JJ.

GUDGEL, Judge:

This is an appeal from a judgment entered by the Franklin Circuit Court reversing a decision of the Kentucky Board of Tax Appeals (board). The court held unconstitutional Kentucky's fuel-grade alcohol tax credit statute, KRS 138.221, and remanded the case to the board to make findings respecting the amounts, if any, appellees are entitled to recover as refunds. On appeal, appellant Revenue Cabinet (cabinet) contends that the trial court erred by failing to find that appellees are not entitled to recover any refunds of the taxes which they paid pursuant to the statute's requirements. For the reasons set out below, we affirm in part, reverse in part, and remand with directions that this case be remanded to the board for further proceedings consistent with our views.

KRS 138.221, which was in effect between July 1, 1986, and June 30, 1988 (and which ultimately was repealed by the 1990 general assembly), provided certain li-

censed gasoline dealers a credit against the excise tax which otherwise was imposed upon each gallon of fuel-grade alcohol purchased by such dealers. A 35¢ per gallon credit was allowed for fuel-grade alcohol distilled within Kentucky, while a maximum credit of 25¢ per gallon was allowed for certain qualified purchases of fuel-grade alcohol produced in other states. Qualified purchases included those of fuel-grade alcohol produced in states which provided reciprocal statutory tax benefits for fuel-grade alcohol produced in Kentucky.

In May 1988, in *New Energy Co. v. Limbach*, 486 U.S. 269, 108 S.Ct. 1803, 100 L.Ed.2d 302 (1988), the United States Supreme Court struck down an Ohio reciprocal ethanol tax credit statute which, as the parties admit, did not materially differ from KRS 138.221. There, upon Indiana's repeal of its tax exemption for ethanol, an Indiana seller of ethanol in Ohio became ineligible for an Ohio tax credit formerly allowed to the seller by virtue of Ohio's reciprocity statute. The Supreme Court held that the Ohio statute discriminated against interstate commerce in violation of the federal commerce clause.

Based upon the Supreme Court's ruling in *Limbach*, in August 1988 appellees filed separate applications with the cabinet seeking refunds of allegedly excessive gasoline taxes paid by them for the period between July 1, 1986, and June 30, 1988. They sought to recover the difference between the total tax credits each appellee received for purchases of qualifying fuel-grade alcohol produced outside of Kentucky, and the total tax credits which each would have received for comparable purchases of fuel-grade alcohol produced in Kentucky. The cabinet denied the refund claims, however, and appellees separately appealed to the board.

Once again, the refund claims were denied. However, in both opinions and orders the board cited the recent *Limbach* decision and acknowledged that the appellees' claims were meritorious. Nevertheless, the board denied the claims because it concluded that it lacked jurisdiction to declare the statute unconstitutional and,

therefore, that it was compelled to affirm the cabinet's actions. These consolidated statutory appeals followed.

The circuit court found, based upon *Limbach*, that KRS 138.221 violates the federal commerce clause. Therefore, the court reversed and set aside the board's orders dismissing appellees' refund claims. The court rejected appellees' contention, however, that by acknowledging the merits of their appeals, the board made binding admissions which left nothing for the parties to litigate before the board and, hence, that the court should award appellees the full amount of the refunds they requested. Instead, the court remanded the appeals to the board to make specific findings respecting the amount of refunds recoverable, if any. This appeal followed.

KRS 134.590 provides in pertinent part as follows:

> (1) When it appears to the appropriate agency of state government that money has been paid into the State Treasury ... for taxes of any kind paid *under a statute held unconstitutional*, the agency of state government which administers the tax *shall refund the money*, or cause it to be refunded, to the person who paid the same....
>
> (2) No refund shall be made unless application for same is made in each case within two (2) years from the time payment was made. (Emphasis added.)

The cabinet concedes the unconstitutionality of KRS 138.221 in light of *Limbach*. However, while the cabinet asserts that *Limbach* should be held unconstitutional only prospectively, such that no constitutional violation for purposes of KRS 134.590(1) may be deemed to have occurred prior to the date upon which *Limbach* was rendered, appellees contend that KRS 134.590 entitles them to a refund of all taxes paid within the applicable two-year period, regardless of whether *Limbach* otherwise is to be prospectively applied. Hence, the first issue we must determine is whether KRS 134.590(1) requires that all of the contested taxes paid during the two-year period preceding the filing of appellees' applications for refunds must be refunded

to them, or whether the taxes refunded in this instance should be limited to those paid subsequent to the effective date upon which the Ohio statute was declared unconstitutional in *Limbach*. We have concluded that appellees' assertion that either the Fourteenth Amendment or KRS 134.590(1) mandates that *Limbach* be retroactively applied, thereby entitling them to a refund of all contested taxes paid independently of any retroactivity analysis under federal law, is without merit.

■ The United States Supreme Court recently considered this retroactivity issue in *American Trucking Associations v. Smith*, 496 U.S. 167, 177, 110 S.Ct. 2323, 2330, 110 L.Ed.2d 148 (1990), and concluded that "[t]he determination whether a constitutional decision of this Court is retroactive—that is, whether the decision applies to conduct or events that occurred before the date of the decision—is a matter of federal law." Although state law controls issues concerning what remedies are appropriate pursuant to the Supreme Court's determination of constitutional issues, *see American Trucking*, 496 U.S. at 177–78, 110 S.Ct. at 2330, and *McKesson Corp. v. Division of Alcoholic Beverages and Tobacco*, 496 U.S. 18, 110 S.Ct. 2238, 110 L.Ed.2d 17 (1990), an issue as to the appropriate remedy under state law cannot be reached unless and until a determination is made that "there is a constitutional violation in the first place." *American Trucking*, 496 U.S. at 182, 110 S.Ct. at 2333.

KRS 134.590(1) requires that "taxes of any kind paid under a statute held unconstitutional must be refunded." However, it does not purport in any way to fix the date upon which a given statute will be considered to have been held unconstitutional. Moreover, we find nothing in the language of the statute to persuade us that the Kentucky General Assembly intended that in a case involving a challenge to a state tax statute based upon an alleged violation of the federal commerce clause, a refund is

required of all contested taxes paid during the period prior to the effective date of the Supreme Court's determination that the statute is unconstitutional. This is especially true since the determination of the retroactivity issue in a case such as this is a matter of federal law. We hold, therefore, that only after we first determine whether *Limbach* should be retroactively applied as a matter of federal law may we determine what, if anything, appellees may claim as refunds pursuant to KRS 134.590. *See American Trucking, supra.*

In *Chevron Oil Co. v. Huson*, 404 U.S. 97, 92 S.Ct. 349, 30 L.Ed.2d 296 (1971), the Supreme Court specifically addressed the issue of when one of its decisions should be nonretroactively applied.[1] The Court approved a standard which involves consideration of three separate factors, as follow:

> First, the decision to be applied nonretroactively must establish a new principle of law, either by overruling clear past precedent on which litigants may have relied, or by deciding an issue of first impression whose resolution was not clearly foreshadowed. Second, it has been stressed that "we must * *. * weigh the merits and demerits in each case by looking to the prior history of the rule in question, its purpose and effect, and whether retrospective operation will further or retard its operation." Finally, we have weighed the inequity imposed by retroactive application, for "[w]here a decision of this Court could produce substantial inequitable results if applied retroactively, there is ample basis in our cases for avoiding the " 'injustice or hardship' " by a holding of nonretroactivity." (Citations omitted.)

404 U.S. at 106–07, 92 S.Ct. at 355. Utilizing this three-pronged standard, in *Chevron Oil* the Court declined to retroactively apply its decision in *Rodrigue v. Aetna Casualty and Surety Co.*, 395 U.S. 352, 89 S.Ct. 1835, 23 L.Ed.2d 360 (1969), reasoning

---

1. The Supreme Court subsequently held that "[o]nce retroactive application is chosen for any assertedly new rule, it is chosen for all others who might seek its prospective application." *James B. Beam Distilling Co. v. Georgia,* —— U.S.

——, 111 S.Ct. 2439, 115 L.Ed.2d 481 (1991). As *Limbach* did not address the issue of retroactivity, the *Beam* standard is not controlling as to the matter now before us.

not only that *Rodrigue* involved an issue of first impression, but also that it effectively overruled a long line of cases which consistently had reached a contrary result. The Court concluded that retroactive application of *Rodrigue* would unfairly impose upon respondent Huson a statute of limitations which differed from that upon which he legitimately had relied.

Certainly, as appellees point out, the vitality of *Chevron Oil* has been seriously questioned. However, thus far the United States Supreme Court has specifically declined to overrule the case. *See, e.g., James B. Beam Distilling Co. v. Georgia,* — U.S. ——, 111 S.Ct. 2439, 115 L.Ed.2d 481 (1991); *American Trucking, supra.* Hence, when considering whether to retroactively apply a case such as *Limbach,* in which the issue of retroactivity was not addressed by the Supreme Court, we are required to follow the dictates of *Chevron Oil,* " 'leaving to this [the Supreme] Court the prerogative of overruling its own decisions.' " *American Trucking,* 496 U.S. at 180, 110 S.Ct. at 2332, quoting from *Rodriguez de Quijas v. Shearson/American Express, Inc.,* 490 U.S. 477, 484, 109 S.Ct. 1917, 1921–22, 104 L.Ed.2d 526 (1989).

■ We turn now to the question of whether *Limbach* should be applied retroactively or prospectively pursuant to the three-pronged standard set out in *Chevron Oil.* As there is no contention that *Limbach* overruled "clear past precedent" under the first prong of this standard, we must determine whether it instead decided "an issue of first impression whose resolution was not clearly foreshadowed." *Chevron Oil,* 404 U.S. at 106, 92 S.Ct. at 355.

*Limbach,* like KRS 138.221, involved a state's award of reciprocal tax credits pertaining to the sale of ethanol. The cabinet asserts that the resolution of the *Limbach* issue was not clearly foreshadowed, noting that although the United States Supreme Court previously had struck down reciprocity rules which were intended to completely bar the import of items from nonreciprocating states, it also had upheld a state subsidy program which provided direct subsidies only to in-state participants. The cabinet argues that the reciprocity provisions of *Limbach* fell between the categories of cases previously addressed by the court, so that the case involved an issue of first impression, the resolution of which was not clearly foreshadowed. Appellees, on the other hand, contend that *Limbach's* outcome was clearly foreshadowed, and that the case must be applied retroactively. In order to resolve the parties' contentions in this vein, it is necessary to briefly review the applicable cases.

The Supreme Court clearly has held that the commerce clause is violated by a state's complete bar on the import or export of goods, by a state's complete exclusion of out-of-state businesses from certain business activities otherwise permitted within that state (including where the exclusion is based upon another state's failure to enact reciprocal agreements or statutes), or by taxes or tax exemptions which operate to discriminate in favor of local products. *See Baldwin v. G.A.F. Seelig, Inc.,* 294 U.S. 511, 55 S.Ct. 497, 79 L.Ed. 1032 (1935) (the commerce clause was violated by New York's prohibition against the sale of any milk which was purchased from out-of-state producers for less than the minimum price fixed for the purchase of milk produced in New York); *Sporhase v. Nebraska ex rel. Douglas,* 458 U.S. 941, 102 S.Ct. 3456, 73 L.Ed.2d 1254 (1982) (absent a showing of necessity for the statute, the commerce clause was violated by a Nebraska statute which absolutely forbid exporting water from Nebraska to states which did not provide reciprocal water rights to Nebraska); *Hughes v. Oklahoma,* 441 U.S. 322, 99 S.Ct. 1727, 60 L.Ed.2d 250 (1979) (the commerce clause was violated by an Oklahoma statute which prohibited the exportation of minnows for sale but placed no limitations on the disposal of minnows within the state); *Lewis v. BT Investment Managers, Inc.,* 447 U.S. 27, 100 S.Ct. 2009, 64 L.Ed.2d 702 (1980) (the commerce clause was violated by a Florida statute which prohibited out-of-state banks, holding companies, and trust companies from participating in certain business activities in Florida); *Great Atlantic and Pacific Tea Co. v. Cottrell,* 424 U.S. 366, 96 S.Ct. 923, 47

L.Ed.2d 55 (1976) (the commerce clause was violated by a Mississippi provision which prohibited the importation of milk from any state which had not signed a reciprocity agreement with Mississippi); *Boston Stock Exchange v. State Tax Commission,* 429 U.S. 318, 337, 97 S.Ct. 599, 610, 50 L.Ed.2d 514 (1977) (the commerce clause was violated by a New York statute which imposed a transfer tax on securities transactions, with the result that most out-of-state sales were taxed more heavily than in-state sales; the Court specifically stated that it was holding "only that in the process of competition no State may discriminatorily tax the products manufactured or the business operations performed in any other State"); *Maryland v. Louisiana,* 451 U.S. 725, 101 S.Ct. 2114, 68 L.Ed.2d 576 (1981) (the commerce clause was violated by a Louisiana tax scheme which granted tax credits and exemptions only for natural gas used within the state; the Court did not address the propriety of the tax credits and exemptions themselves, but only the impact which they had on taxpayers' ultimate tax burdens); *Armco Inc. v. Hardesty,* 467 U.S. 638, 104 S.Ct. 2620, 81 L.Ed.2d 540 (1984) (the commerce clause was violated by a West Virginia provision which imposed a higher state tax on wholesalers of imported products, even where locally-manufactured products were instead subject to an in-state manufacturing tax); *Bacchus Imports, Ltd. v. Dias,* 468 U.S. 263, 273, 104 S.Ct. 3049, 3056, 82 L.Ed.2d 200 (1984) (the commerce clause was violated by a liquor tax exemption which applied only to certain locally-produced products and which "had both the purpose and effect of discriminating in favor of local products"); and *Hunt v. Washington State Apple Advertising Commission,* 432 U.S. 333, 97 S.Ct. 2434, 53 L.Ed.2d 383 (1977) (the commerce clause was violated by a North Carolina statute which in effect prohibited the display of the stringent Washington State apple grades on closed crates of apples sold or shipped into North Carolina, where compliance with the statute required the Washington State growers to either incur substantial costs in obliterating grades from shipping boxes or cease shipment of apples into North Carolina.)

On the other side of the coin, however, in *Hughes v. Alexandria Scrap Corp.,* 426 U.S. 794, 96 S.Ct. 2488, 49 L.Ed.2d 220 (1976), the Supreme Court held that the commerce clause was not violated by a Maryland statutory scheme which provided for the payment of bounties or subsidies to scrap processors for the destruction of old automobile hulks, and which required out-of-state processors to present more extensive documentation regarding the hulks than in-state processors were required to present. The Court reached this decision even though amendment of the statutory scheme resulted in a reduction in the number of bounty-eligible hulks available to out-of-state processors and a decline in the interstate movement of such hulks. The Court's approval of the imposition of different requirements upon parties who wished to be paid subsidies by the state, dependent upon whether the parties were in-state or out-of-state processors, is especially pertinent to *Limbach* in view of the Supreme Court's subsequent description of "[b]oth tax exemptions and tax deductibility" as "a form of subsidy that is administered through the tax system." *See Regan v. Taxation With Representation of Washington,* 461 U.S. 540, 544, 103 S.Ct. 1997, 2000, 76 L.Ed.2d 129 (1983).

■ In *Limbach,* the Supreme Court addressed for the first time the issue of whether the commerce clause was violated when a state provided tax credits only for certain products which were produced either in the home state or in certain states which provided reciprocal tax credits. Unlike the situations previously addressed by the Court, in *Limbach* out-of-state products were neither subject to additional taxes nor uniformly excluded from eligibility for the tax credit. Moreover, products which were not eligible for the tax credit were neither excluded from sale, nor subject to special packaging or other requirements before they could be sold in Ohio. Thus, even if the Supreme Court decided *Limbach* as a logical outgrowth of its prior decisions limiting states' power "to discrim-

inate against interstate commerce" absent justification "by a valid factor unrelated to economic protectionism," *Limbach*, 486 U.S. at 273–74, 108 S.Ct. at 1807–08, we are nevertheless convinced that the Court equally well might have relied upon *Hughes v. Alexandria Scrap, supra*, and *Regan, supra*, to hold that the tax credits here constituted permissible payments of subsidies to qualified parties. Contrary to appellees' assertion, therefore, we are not persuaded that the Supreme Court's failure to find that *Limbach* differed from its commerce clause precedents for analysis purposes means that the decision in *Limbach* was clearly foreshadowed. Thus, we conclude that *Limbach* decided "an issue of first impression whose resolution was not clearly foreshadowed." *Chevron Oil*, 404 U.S. at 106, 92 S.Ct. at 355. Hence, the first prong of the *Chevron Oil* standard is satisfied.

Next, we must consider whether *Limbach* meets the second prong of the *Chevron Oil* standard. This prong requires us to look " 'to the prior history of the rule in question, its purpose and effect, and whether retrospective application will further or retard its operation.' " (Citation omitted.) *Chevron Oil*, 404 U.S. at 107, 92 S.Ct. at 355.

Clearly, "a State may enact laws pursuant to its police powers that have the purpose and effect of encouraging domestic industry." *Bacchus*, 468 U.S. at 271, 104 S.Ct. at 3055. KRS 138.221 specifically was enacted "to partially offset the operating costs of those fuel-grade alcohol producers that contribute to the economy of this state, by participating in and subsidizing the market costs for fuel-grade alcohol offered for sale in this state." KRS 138.-221(1)(a). Since we are of the opinion that the tax credits at issue were not inconsistent with established case law at the time of their enactment, we are not persuaded that *Limbach's* retroactive application would in any way further the operation of the rule set out therein. Instead, contrary to the purpose of the commerce clause, retroactive application might operate only to limit the legislature's future willingness to attempt the "legitimate state taxation of interstate commerce." *American Trucking*, 496 U.S. at 181, 110 S.Ct. at 2332. We therefore conclude that the second prong of the *Chevron Oil* standard is also satisfied.

The third prong of the *Chevron Oil* standard requires us to weigh the inequity which would result from *Limbach's* retroactive application. We conclude that ample basis exists here for holding that the case must be applied prospectively in order to avoid "substantial inequitable results." *Chevron Oil*, 404 U.S. at 107, 92 S.Ct. at 355.

Similar to the situation described in *American Trucking, supra*, and unlike that described in *McKesson, supra*, here there is nothing to indicate that the legislature promulgated and implemented KRS 138.221 by indulging in anything other than a good faith presumption that this tax scheme, which was similar to those implemented in Ohio and evidently in several other states, would be upheld against constitutional challenge. Moreover, it is clear that the retroactive invalidation of KRS 138.221 would result in "potentially disruptive consequences for the State and its citizens" by depleting the state treasury and "thus threatening the State's current operations and future plans." *American Trucking*, 496 U.S. at 182, 110 S.Ct. at 2333. This is especially true here since "such an approach would unfairly penalize favored taxpayers for the State's failure to foresee" that the Supreme Court would reject this type of tax credit scheme. *American Trucking*, 496 U.S. at 183, 110 S.Ct. at 2333. Because we are of the opinion that the retroactive application of *Limbach* would "produce substantial inequitable results," *Chevron Oil*, 404 U.S. at 107, 92 S.Ct. at 355, we conclude that *Limbach* also satisfies the third and final prong of the *Chevron Oil* standard.

In view of our conclusion that *Limbach* satisfies the three prongs of the *Chevron Oil* standard, we hold that the decision must be prospectively applied. Hence, we conclude that KRS 138.221 was declared unconstitutional effective May 31, 1988, which was the date upon which the *Lim-*

*bach* decision was rendered. It follows that taxes paid by appellees for any periods prior to that date were not paid "under a statute held unconstitutional" for purposes of KRS 134.590. However, as even the prospective application of *Limbach* renders KRS 138.221 unconstitutional from May 31, 1988, through the cessation of the KRS 138.221 tax credit period on June 30, 1988, appellees are entitled to refunds of any contested taxes which they may have paid in regard to that one-month period, to the extent that on remand they otherwise can demonstrate that they have met the requirements of KRS 134.590 for obtaining refunds. *See American Trucking,* 496 U.S. at 187, 110 S.Ct. at 2335–36.

■ As a final matter, we need to address appellees' contention that because the cabinet did not file a cross appeal from the board's decision, the issue raised by the cabinet concerning the prospective application of *Limbach* was not preserved for appellate review. However, we note that the right to appeal from a decision of the board is a statutory one conferred solely by KRS 131.370. This statute permits a "party aggrieved by any final order, decision, or determination of the Kentucky Board of Tax Appeals" to take an appeal to the circuit court. KRS 131.370(1). Here, because the cabinet was not aggrieved by the board's decision, it did not have a right under the statute to appeal from that decision by cross appeal or otherwise. Its failure to do so, therefore, did not preclude it from raising the retroactivity issue in its response to appellees' appeal.

The court's judgment is affirmed in part, reversed in part, and remanded for further proceedings consistent with the views expressed in this opinion.

LESTER, C.J., concurs.

WILHOIT, J., dissents and files a separate opinion.

WILHOIT, Judge, dissenting.

I respectfully dissent from the majority opinion. The majority is to be congratulated on its able exposition of the principles governing the prospective or retroactive application of the constitutional rulings of the United States Supreme Court. This will, no doubt, gratify legal scholars, but, alas, it has nothing to do with the case before us.

The dispositive question in this case is whether KRS 134.580(6) and 134.590 mean what they say. I believe they do, the majority does not. By these statutes the General Assembly has clearly expressed its will that tax payments made under a statute later held to be unconstitutional shall be refunded provided application for refund is made within two years of each payment of such taxes. The statutes make no distinction as to whether the particular holding of unconstitutionality is to be applied retroactively or prospectively, and so far as I am aware the highest court in this state, which has considered these statutes and their predecessor statutes many times has never intimated that this kind of distinction was appropriate. *See, e.g., Department of Revenue v. Jack Cole Co.,* Ky., 474 S.W.2d 70 (1971). In short, when a judicial declaration of invalidity is effective is of no significance under these statutes. It is the declaration itself which triggers them.

For a court to interpolate a requirement into these statutes that a declaration of constitutional invalidity must be given retroactive effect for them to apply amounts to a judicial frustration of what is a plain and legitimate expression of the will of the General Assembly in favor of that court's notion of what ought to be public policy. Presumably no sane taxpayer would continue to pay taxes under a statute determined by the courts to be unconstitutional, yet under this court's holding today only those taxpayers who paid the tax after the statute was declared invalid would be entitled to a refund, unless the declaring court elected to give its holding retroactive application.