**COMMONWEALTH of Kentucky, REVENUE CABINET; C. Emmett Calvert, former Secretary of the Revenue Cabinet; Kim Burse, Secretary of the Revenue Cabinet; Commonwealth of Kentucky, Finance and Administration Cabinet; L. Rogers Wells, Jr., former Secretary of the Finance and Administration Cabinet; W. Patrick Mulloy, Secretary of the Finance and Administration Cabinet; and Kentucky State Treasury; Robert Mead CPA, former State Treasurer; Frances Jones Mills, State Treasurer; individuals in their official capacities only, Appellants/Cross–Appellees,**

**v.**

**Tom GOSSUM, T.C. Lusk, Harry J. Donahue, Amos L. Harris, Encil Dukes, Willard McLean, Hack Riddle, George Aldridge, John Tensley, Herbert Mayfield, Junior Letts, James McKnight, Fred Johnson, Buford Wilson, Kenneth Holloway, James Ricker, Paul Jasper, Jerry Bearden and James W. Castle, individually and as representatives of a class; Kenneth G. Nielsen and Samuel L. Cox, individually and as representatives of a class; Willodyne C. Sievert and Arthur**

Peter, III, individually and as representatives of The Kentucky Federation of Chapters of the National Association of Retired Federal Employees, Chapter 1610, and Council of The Kentucky Chapters of The Retired Officers Association, Appellees/Cross–Appellants.

Nos. 92–SC–1041–TG, 94–SC–216–TX.

Supreme Court of Kentucky.

Sept. 1, 1994.

Rehearing Denied Dec. 22, 1994.

Michael J. Denny, Legal Services Div., Revenue Cabinet, Frankfort, Donald L. Cox, Scott R. Cox, Lynch, Cox, Gilman & Mahan, Louisville, Maryellen B. Allen, Asst. Atty. Gen., Frankfort, for appellants/cross-appellees.

Thomas J. Luber, Virginia H. Snell, Holliday Hopkins Thacker, Wyatt, Tarrant & Combs, Louisville, Len W. Ogden, Jr., Paducah, James D. Asher, Whitesburg, Teddy B. Gordon, Todd Bolus, Louisville, for appellees/cross-appellants.

REYNOLDS, Justice.

This appeal is from the judgment of Marshall Circuit Court for which transfer was granted. This controversy involves whether, and to what extent, federal retirees are entitled to refunds of state taxes paid on their federal retirement annuities.

### I. ENTITLEMENT TO REFUND

Before its amendment, effective July 13, 1990, KRS 141.021 exempted state retirement annuities, regardless of amount, from state income tax, but exempted federal retirement annuities only up to $4,000. In 1989, the United States Supreme Court held a similar Michigan statute violative of the federal constitutional doctrine of intergovernmental tax immunity. *Davis v. Michigan Dept. of Treasury*, 489 U.S. 803, 109 S.Ct. 1500, 103 L.Ed.2d 891 (1989).

In response to the *Davis* decision, Kentucky's General Assembly in 1990, exempted all federal retirement benefits from state income taxation, thereby treating the retirement benefits of retired state, local and federal governmental employees equally. (See KRS 141.021, effective July 13, 1990.) Following the *Davis* decision, federal retirees residing in Kentucky (Gossum, et al.), filed a class action in Marshall Circuit Court seeking refunds of taxes paid on any federal retirement benefits received during the five-year period preceding the *Davis* decision. The Revenue Cabinet conceded that the statute was invalid, but contested the refund issue by questioning the retroactivity of *Davis*.

The circuit court reasoned that inasmuch as the Commonwealth has consented by statute to refund taxes paid under an unconstitutional provision (KRS 134.590), the retroactivity of *Davis* is essentially a moot question; refunds being in order as a matter of state law. The trial court also ruled: a) that the two-year limitation period in the case of taxes held unconstitutional (KRS 134.590), as opposed to the four-year period for other refunds (KRS 134.580 and KRS 141.235), does not violate due process or equal protection, because there is a reasonable basis for, and a legitimate state interest in, the distinction, b) that the taxpayers must pursue their refunds under KRS 134.590, whereunder refunds may be available only for the two years preceding the year in which this litigation was commenced, and c) that because the amount of taxes due is in litigation, subsection (6) rather than subsection (2) of KRS 134.590 governs the time for which applications for refunds must be made, i.e., within two years from the date the amount due is determined through this litigation. Both sides appealed, putting all of the trial court's major rulings in issue.

■ Appellants contend that federal law does not require Kentucky to refund income taxes paid by federal retirees on federal retirement benefits if a procedure exists to challenge the tax in question before it is paid. In *Harper v. Virginia Dept. of Taxation*, 509 U.S. ——, 113 S.Ct. 2510, 125 L.Ed.2d 74 (1993), the United States Supreme Court concluded that the Virginia Supreme Court decision that denied retroactivity of *Davis* was in error. (*See Harper v. Virginia, Dept. of Taxation*, 241 Va. 232, 401 S.E.2d 868 [1991].) The United States Supreme Court also held that the state court had erroneously applied the factors set forth in *Chevron Oil Co. v. Huson*, 404 U.S. 97, 92 S.Ct. 349, 30 L.Ed.2d 296 (1971), in denying relief to petitioners therein, as to all taxable events occurring before *Davis* was decided. *Harper* is unambiguous in its holding that *Davis* applies retroactively, without resort to the test for retroactivity articulated in *Chevron, supra*.

However, the Supreme Court therein did not mandate payment of refunds to the Virginia retirees, but rather concluded that "federal law does not necessarily entitle (the federal retirees) to a refund." Instead, the United States Supreme Court remanded the case to the Supreme Court of Virginia "to provide relief consistent with federal due process principles." (*See Harper v. Virginia, Dept. of Taxation*, 242 Va. 322, 410 S.E.2d 629 [1991].) Thus, the U.S. Supreme Court ruled that if Virginia provided its federal retirees with an opportunity to obtain relief in a predeprivation hearing prior to requiring payment of the tax, no refund of taxes paid by federal retirees was federally mandated. The Supreme Court defined the procedures which would qualify for federal due process purposes as: predeprivation processes as an opportunity that exists for the contesting taxpayer to be permitted under state law to bring suit to enjoin imposition of a tax prior to its payment, or by allowing taxpayers to withhold payment and then interpose their objections as defenses in a tax enforcement proceeding. *See Reich v. Collins*, 263 Ga. 602, 437 S.E.2d 320 (1993). *See James B. Beam Distilling Co. v. Georgia*, 501 U.S. 529, 111 S.Ct. 2439, 115 L.Ed.2d 481 (1991), wherein the United States Supreme Court required retroactivity and disagreed with using the *Chevron Oil* analysis. *See also Hagge v. Iowa Dept. of Revenue and Finance*, 504 N.W.2d 448 (Iowa 1993), wherein the Supreme Court of Iowa ordered refunds to be paid as Iowa did not provide the type of predeprivation remedies mandated by *Harper*.

■ We arrive at the question of whether Kentucky provides predeprivation remedies which are adequate to satisfy the due process requirements established in *Harper*. Where no such *meaningful* predeprivation procedures exist, then a state is constitutionally required to provide its citizens with "backward-looking relief". *McKesson Corp. v. Division of Alcoholic Beverages and Tobacco*, 496 U.S. 18, 110 S.Ct. 2238, 110 L.Ed.2d 17 (1990) and *Harper, supra*.

The Revenue Cabinet asserts that because a taxpayer may seek review of an assessment without first paying the tax, these procedures constitute sufficient predeprivation remedies and, thus, no "backward-looking" relief is required under federal law.

Kentucky's system is structured so that a taxpayer is coerced into paying the tax in advance to avoid financial sanctions. The Supreme Court has held that in such cases the due process clause of the Fourteenth Amendment obligates the state to provide *meaningful* backward-looking relief to rectify any unconstitutional deprivation.

> We have long held that, when a tax is paid in order to avoid financial sanctions or a seizure of real or personal property, the tax is paid under "duress" in the sense that the State has not provided a fair and meaningful predeprivation procedure....

*McKesson, supra*.

Any Kentucky taxpayer who fails to file an income tax return or to pay income taxes when due under KRS Chapter 141 is subject to an array of fines and civil and criminal penalties. KRS 141.990; KRS 131.180. Civil penalties for failure to make payments or file returns can be as much as 20% of the total tax due. If a taxpayer does not make an estimated payment when due (or underpays an estimate), he is subject to a penalty of as much as 10% of the amount. If the Cabinet's assessment is deemed the result of the taxpayer's negligence, an additional 10%

penalty is levied; if the assessment is determined to be the result of taxpayer fraud, the penalty jumps to 50%. If it is determined that the tax was willfully withheld, the taxpayer is guilty of a Class D felony. Furthermore, all taxes payable to the state which are not paid when due thereafter accrue interest at the adjusted prime interest rate. KRS 131.183.

Under KRS 131.180(4), if a taxpayer fails to timely file a return, the Revenue Cabinet may estimate the tax due, assess the tax at twice the amount estimated to be due, and then impose a penalty up to an amount equal to 50% of the assessed amount. The Commonwealth also has broad powers to require immediate payment of taxes prior to any challenge to an assessment if it believes that "any tax claim for any ... reason is being endangered." The taxpayer's only recourse becomes filing a bond to avoid garnishment. And, only after the bond is filed can a taxpayer challenge the assessment. Finally, a taxpayer cannot escape some payment where he has failed in his challenge to an assessment at the Board of Tax Appeals, and desires to appeal the matter to circuit court. KRS 131.370(3) requires the taxpayer to file a supersedeas bond, or pay the tax, before pursuing the matter in circuit court.

Because the statutory scheme is pointedly designed to coerce taxpayers into remitting taxes before challenging any liability to avoid potential economic disadvantage, Kentucky does not offer meaningful, adequate predeprivation remedies for purposes of federal law.

Moreover, there is nothing in the statutes relating to declaratory and injunctive relief proceedings that would permit taxpayers to withhold payment pending resolution of their claims. The Cabinet's argument against appellees' motion for injunctive relief reflects that such actions do not constitute adequate predeprivation remedies. It asserted that appellees were not entitled to an injunction to preclude the collection of the tax for 1989, because if the court ultimately rules in their favor, the taxpayers have a means by which they can receive the statutorily authorized remedy of tax refunds.

In *Hagge, supra*, the Iowa Supreme Court held that their state did not offer meaningful predeprivation remedies as required by federal law as, although the state no longer expressly required prepayment of tax, interest and penalties before contesting an assessment, "we are convinced that, by *McKesson* standards, tax payment in Iowa continues to be less 'voluntary' than 'under duress.' "

Moreover, state law requires relief beyond consideration of the demands of federal due process as the Kentucky legislature has enacted refund statutes that provide that Kentucky taxpayers who have paid taxes above what they are legally required to remit are entitled to refunds. KRS 134.580, KRS 134.590 and KRS 141.235. In *Brumley v. Utah State Tax Commission*, 868 P.2d 796 (Utah 1993), the court held that plaintiffs were entitled to refunds under *Davis* for those taxes paid on their retirement benefits, even though *Harper* provides some latitude to the states to craft a remedy for the illegal exaction of taxes because their legislature had provided refunds to be the appropriate remedy.

Because the General Assembly decreed that the Commonwealth is required to make "the statutorily authorized remedy of tax refunds" where a person has been improperly taxed, then that is the minimum remedy available under Kentucky law.

We find no merit to Revenue Cabinet's contention that no refunds are due or owing insofar as no statute was declared unconstitutional. It is the obvious intent of the refund statutes to provide a remedy to taxpayers who were taxed pursuant to an unconstitutional tax, which is all inclusive of an unconstitutional taxing scheme. The facts in this case clearly fall within the refund statutes.

Therefore, we hold that Kentucky fails to provide meaningful adequate predeprivation processes as required by *Harper*, thereby invoking the retroactivity of *Davis* and entitling the federal pensioners to a refund of taxes previously paid pursuant to KRS 141.021.

## II. STATUTE OF LIMITATIONS FOR DETERMINING THE YEARS AVAILABLE FOR REFUND

■ As refunds are required, they shall be implemented pursuant to KRS 134.590(1, 2).

To augment the opinion we state that the income taxes paid upon the federal retirees' pensions were made under an unconstitutional part of a statute. (KRS 141.021). The parties, agreeing on one point, note that the determination in *Davis* was that the taxing scheme in Michigan (and, admittedly, in Kentucky) was unconstitutional. *See Davis, supra; Harper, supra.*

Portions of the taxation statutes herein referred to address both *ad valorem* taxes or *taxes of any kind* paid under a statute held unconstitutional. We are concerned with the latter, specifically the income tax.

Irrespective of the retirees' argument, the remedy of refunds follows no broad, ever-widening, or all encompassing scheme. It is to be recognized "that the right to a refund of illegally or improperly collected taxes does not derive from the common law, but is a matter of legislative grace." It follows that if appellees are to be successful in this action, they must bring themselves within the terms of the statute authorizing a refund. *Department of Conservation v. Co-De Coal Co.*, Ky., 388 S.W.2d 614 (1964). A curative statute which provides a remedy must be strictly followed in all respects. *Norfolk and W. Ry. Co. v. McCoy*, 288 Ky. 458, 156 S.W.2d 493 (1941). Both KRS 134.590 and 134.580(6) are specific as to refunds of taxes paid under an unconstitutional statute. Pointedly, KRS 134.580(6) states that:

> In cases in which a statute has been held unconstitutional, *taxes paid thereunder* may be refunded to the extent provided by KRS 134.590, *and by the statute held unconstitutional.* (Emphasis added.)

KRS 134.580 and 134.590 constitute the general refund statutes. The former relates to refunds for taxes, excepting ad valorem taxes and unconstitutional taxes, both of which are covered by the latter provision. Distinctly, these two statutes mandate refunds for taxes paid, whether the payment was voluntary/involuntary, regardless of the reason for overpayment. The Revenue Cabinet pursues the theory that no refunds should be paid as only prospective application of the federal decisions was appropriate. The simple but dispositive question is whether the statutes mean what they say. By the statutes (KRS 134.580 and 134.590) the General Assembly has clearly expressed a will that tax payments made under a statute later held to be unconstitutional shall be refunded, provided application for refund is made within two years from the date payment was made. The statutes, at least at this point, are simplistic in that they make no distinction as to whether the holding of unconstitutionality is to be applied only prospectively or retroactively. *See Department of Revenue v. Jack Cole Co.*, Ky., 474 S.W.2d 70 (1971).

The retirees maintain that KRS 134.590(6) extends the statute of limitations to two years after final resolution of this case. We attach no merit to this argument as KRS 134.590, commencing with (3) through (6), applies to refunds of local ad valorem taxes *only*, and was the result of an amendment affected by SB 287 of the regular legislative session of 1980, wherein no change was made in the statutory requirements for refunds of taxes paid under a statute held unconstitutional. It appears, additionally, that the amount of taxes due is not an item of the litigation. It is an issue of all of the tax or none of the tax. *Also see Board of Education of Fayette County v. Taulbee*, Ky., 706 S.W.2d 827 (1986), which enumerates three taxing districts, namely, the Department of Revenue, the Board of Education and the Urban County Government as distinct governmental and taxing entities. The case distinguishes that the Department of Revenue shall refund under KRS 134.590(1), and that sections (3), (4), (5), and (6) apply to the refund of all other taxing districts.

*Davis, supra,* reinforced by *Harper, supra,* emphatically holds that the decision was fully retroactive and *Revenue Cabinet v. CSC Oil Co., Inc.*, Ky.App., 851 S.W.2d 497 (1993), is, therefore, distinguished.

The retirees ingeniously seek justification for refunds under a multitude of statutes, including KRS 141.235, 134.580 and 134.590. However, this is not a pick and choose situation to produce a maximum refund. We simply do not follow, let alone adopt, the argument of ambiguity in the refund statutes. The application of KRS 141.235 and 134.580 is limited and concerns overpayment of taxes where no tax was due and is not extendable to apply to situations where the constitutionality of a statute or a

tax scheme is at issue. A curative statute which provides a remedy must be provided for in all respects. *Norfolk, supra.* There is no plethora of options. Refunds are provided under KRS 134.590. Choice of remedy for equitable relief is lacking if none is provided under the refund statute. We determine that Kentucky, by its refund statute, applicable to taxing statutes declared unconstitutional, has availed itself of a procedural protection minimizing the disruptive effect of a tax scheme's invalidation. Inclusively, the legislature has provided, by statute, a relatively short period of limitations which is protective to a state's fiscal security when weighed against the state's obligation to provide meaningful relief for its unconstitutional taxation. *McKesson, supra.*

A reasonable basis does exist for a distinction sufficient to create justification for the separate classification of a four or two year statute of limitation. *Tabler v. Wallace,* Ky., 704 S.W.2d 179 (1985). The two-year classification withstands an equal protection scrutiny as it rationally relates to the furthering of a legitimate state interest. *Vance v. Bradley,* 440 U.S. 93, 99 S.Ct. 939, 59 L.Ed.2d 171 (1979). This case stands as a clear example of the distinction that the state legislature has drawn between refunds of taxes paid under a statute (equivalent to a tax scheme) held unconstitutional and of taxes paid under a constitutional statute which is rationally related to a legitimate state interest. Revenue Cabinet acknowledges that refunds under a constitutional statute should normally involve individual taxpayers and nominal payments, whereas refunds under an unconstitutional statute will involve multitudes of taxpayers and millions of dollars.

*McKesson, supra,* authorizes the conclusion that the two-year statute of limitations (KRS 134.590[2] ) is not violative of constitutional standards. Refunds shall be made to those retirees whose application for same was made in each case within two years from the time payment was made. The judgment of Marshall Circuit Court upon this issue is affirmed in part and reversed in part.

### III. ATTORNEYS' FEES

■ Lastly, at issue is whether an award of attorneys' fees is mandated under 42 USC § 1988. As the retirees had an adequate remedy under state law, their 1983 action alleging unlawful and excessive taxation was not cognizable in state court and, thus, they are not entitled to an award of attorneys' fees pursuant to 42 USC § 1988. *See Linderkamp v. Bismarck School Dist. No. 1,* 397 N.W.2d 76 (N.D.1986); *see also Zizka v. Water Pollution Control Authority,* 195 Conn. 682, 490 A.2d 509 (1985).

The retirees received the injunctive relief which they sought. *See Redd v. Lambert,* 522 F.Supp. 608, 610 (N.D.Miss.1981), aff'd by, 674 F.2d 1032 (5th Cir.1982). Adequacy of the state court remedy becomes evident from the fact that retirees obtained the injunctive relief requested. The inability to collect attorneys' fees under Section 1983 does not prevent the remedy provided by the Kentucky courts herein from being plain, speedy and efficient.

We affirm that portion of the trial court's judgment upon the issue of attorneys' fees.

Issue I: All concur.

Issue II: STEPHENS, C.J., and LAMBERT, LEIBSON and SPAIN, JJ., concur.

WINTERSHEIMER, J., dissents by separate opinion in which STUMBO, J., concurs.

Issue III: All concur.

WINTERSHEIMER, Justice, concurring in part and dissenting in part.

I respectfully dissent in regard to the imposition of a two-year statute of limitations rather than a four-year statute of limitations on the application for refund. I concur in the result achieved by the majority opinion insofar as it requires a refund of tax pursuant to *Davis v. Michigan, Dept. of Treasury,* 489 U.S. 803, 109 S.Ct. 1500, 103 L.Ed.2d 891 (1989), and insofar as it treats attorney fees.

KRS 134.590(6) is not the appropriate statute because it relates only to ad valorem taxes and to those which are unconstitutional.

Refunds pursuant to this statute cover the situation as to local tax districts. *Board of Education of Fayette County v. Taulbee,* Ky., 706 S.W.2d 827 (1986). This situation does not involve ad valorem taxes and there is no finding in the majority opinion or elsewhere that the tax itself is unconstitutional. Therefore, I do not believe Chapter 134 applies.

The tax in question is an income tax. KRS 141.235(2) states that any tax collected pursuant to the provisions of KRS Chapter 141, the income tax, may be refunded or credited in a manner provided in KRS 134.580 if the claim for refund or credit has been made within four years of the due date of the return or the date the tax was paid, whichever is later. Consequently, pursuant to KRS 134.580 and KRS 141.235, the refund may be paid to those who file for such a refund within four years of the due date or the payment of the tax.

It is my view that the status of taxation on pension funds in Kentucky remains a patchwork. The cases as presented to this Court involve the allegations of constitutionality regarding exemptions and not the direct imposition of the tax. There is a significant difference in the imposition of a tax and relief or exemption from the effects of the tax. The fairness of taxation on any pension funds, whether it be governmental or private, should be addressed to the General Assembly. It would be a violation of separation of powers between the judicial and legislative branches of government for this Court to intrude in such an area. Consequently, the issue of fairness of taxation on any pension remains with the General Assembly. Currently there is no legal action pending before this Court to consider whether the taxation of the remaining group of private pension funds is arbitrary or otherwise unconstitutional.

STUMBO, J., joins in this dissent.