Monica BARRETT, Owsley County Property Valuation Administrator; Sid Gabbard, Owsley County Court Clerk; Billy P. McIntosh, Owsley County Sheriff; Revenue Cabinet; Commonwealth of Kentucky; C. Emmett Calvert, Secretary of the Kentucky Revenue Cabinet; Owsley County Board of Education Taxing District; Owsley County Library Taxing District; Owsley County Extension Service Taxing District; Owsley County Soil Conservation Service Taxing District; Owsley County Health Department Taxing District; Owsley County Forest Service Taxing District, Appellants,

v.

Carl R. REYNOLDS; Larry Bates; Steve Gabbard; John Wilson Minter, Sr.; Barbara Murrell; Shelby Moore, Jr., on behalf of themselves and the class of all others similarly situated as ordered by the Owsley Circuit Court; and Kendall Robinson, Attorney of record for the appellees; and Joseph R. Wheat, Attorney of record for the appellees, Appellees.

No. 90–SC–656–DG.

Supreme Court of Kentucky.

Sept. 26, 1991.

As Modified on Denial of Rehearing Nov. 21, 1991.

James P. Benassi, Revenue Cabinet, Frankfort, for appellants.

Kendall Robinson, Booneville, Joseph R. Wheat, Lexington, for appellees.

## OPINION OF THE COURT AFFIRMING THE COURT OF APPEALS' OPINION

The Kentucky Supreme Court hereby affirms the decision of the Court of Appeals in this matter. This Court hereby adopts the opinion of the Court of Appeals by Hayes, J., with Emberton, Gudgel and Hayes, JJ., sitting.

This is an appeal from a judgment of the Owsley Circuit Court determining that the property valuation methods used in the assessment of appellees' property taxes were unconstitutional.

The appellant, Monica Barrett, is the Property Valuation Administrator (PVA) of Owsley County, Kentucky, and is charged with assessment of all taxable property in the county and with the preparation of the property tax rolls. As a PVA, she is subject to the authority of the Department of Revenue. KRS 132.420. The department reviews annually the constitutional validity of the PVA's assessment rolls. A "sales-assessment ratio study" is conducted to compare actual property sales figures with the last previous tax assessment placed by the PVA. KRS 132.250. In 1986, the department and the PVA initiated a "remapping" of Owsley county, dividing it into 118 tracts. This mapping was initiated because

a fire in 1967 at the courthouse had destroyed all of the records, including the maps. Only a portion of the remapping and reassessment had been completed by the time this action was filed. Therefore, only the newly mapped areas had been reassessed.

In 1986, the department ordered the PVA to increase farm assessments by 20%, residential by 40%, and commercial by 40%, based on its latest random appraisal study. Again, only the mapped areas were reassessed, using a newer method which the trial court referred to as an impermissible mathematical formula. Approximately 1,350 taxpayers were affected by the reassessment. Of these, 634 appealed to the local board of tax appeals.[1]

The appellees, six Owsley County property owners, filed suit for declaratory and injunctive relief under KRS 418.040, alleging unfair methods of property valuation for 1986. By order entered January 20, 1988, the action was class certified to include owners of residential, commercial, agricultural and horticultural property. Specifically, it was maintained that the Owsley County PVA, Monica Barrett, used an unconstitutional method to reappraise Owsley County property in 1986. In addition, it was argued that the taxpayers in the part of the county which was reappraised were discriminated against since two separate methods of valuation were used, one for the remapped portion of the county and another for that portion which was not remapped. The Revenue Cabinet was also named as a defendant due to its action in certifying the assessments to the county judge and county clerk. It was maintained that the cabinet failed in its constitutional and statutory duty to equalize assessments among the counties. KRS 133.150 and KRS 133.170.

By order entered October 7, 1988, the court held that the revised mapping data should not have been used until the entire county had been completed, and therefore was arbitrary and discriminatory. It was also held that by applying a mathematical formula to the assessment of real estate in the newly mapped areas, the assessment failed to obtain constitutionally valid assessments, and resulted in a discriminatory tax burden on those taxpayers. On February 3, 1989, the Commonwealth was ordered to pay attorney fees and costs. This appeal followed.

Initially it is argued that appellees lacked standing to maintain either a personal or class action by their failure to file for a refund by appealing to the Owsley County Board of Assessment Appeals. Appellants maintain that no actual controversy exists between the six named appellees (plaintiffs below), as the assessments by the Owsley County Board of Assessment Appeals and the Kentucky Board of Tax Appeals, in some cases, are res judicata. We disagree.

Judicial review of the constitutionality of a local tax assessment may be obtained regardless of whether administrative remedies have been exhausted. *Dolan v. Land,* Ky., 667 S.W.2d 684 (1984). *Bischoff v. City of Newport,* Ky.App., 733 S.W.2d 762 (1987). A class action is a proper vehicle for a declaratory judgment challenging a tax assessment or rate. *Fitzpatrick v. Patrick,* Ky., 410 S.W.2d 143 (1966). An actual controversy for purposes of the declaratory judgment statute requires a controversy over present rights, duties and liabilities; it does not involve a question which is merely hypothetical or an answer which is no more than an advisory opinion. *Dravo v. Loberty Nat'l Bank & Trust Co.,* Ky., 267 S.W.2d 95 (1954). In this case, the appellees challenged in circuit court the constitutionality of the tax assessment as being arbitrary and unfair, resulting in an $8,000,000.00 increase in tax liability. The Owsley Board could not and did not adjudicate the constitutional issues. Therefore res judicata has no application in this case.

In addition, KRS 134.590(6) provides:

No refund shall be made unless application is made *in each case* within two (2) years from the date payment was made. If the question of the amount of taxes due is in litigation, the application for refund must be made within two (2)

---

1. The local board decreased the PVA's assessment by over $5 million.

years from the date the amount due is finally determined. (Emphasis ours.)

This has been held to mean that if a suit challenging the method of assessment is pending, the time for making the claim for refund, either against the Commonwealth or against other taxing agencies, does not expire until two years after the date the litigation has been finally determined by the courts. *Griggs v. Dolan*, Ky., 759 S.W.2d 593 (1988).

Appellants' cases in support of their res judicata argument are misplaced, as they concerned the notice requirement to taxpayers before an increase in assessment could go into effect.

The appellants' next argument concerns the failure to exhaust administrative remedies and therefore is a restatement of their first argument.

The next alleged error is that the appellees failed to prove the constitutional infirmity of the Owsley County appraisals.

Sections 171–174 of the Kentucky Constitution apply to the assessment of taxes and require a fair, uniform and equitable rate for all classes of property in the Commonwealth. Section 172 provides that all taxable property must be assessed at its fair cash value, estimated at the price it would bring at a fair and voluntary sale. Traditionally, the method of assessment utilized has been the "comparable sales" method, which uses the most recent sales price of similar property. This is the method that was used on the "unmapped" areas of the county. On the newly mapped areas appellant Barrett admitted that the comparable sales method was not used, and that instead she used information given to her by the mapping staff and applied a mathematical formula to the improvements:

| Land | Per Acre |
|---|---|
| "Up and down" land | $ 100 |
| Stripped land | $ 50 |
| Bottom land | $ 400 |
| Mountain land | $ 150 |
| Lots | $1000 (average) |
| Good wood frame house | $ 20 sq. ft. |
| Regular wood frame | $ 15 sq. ft. |
| New brick | $ 30 sq. ft. |
| Older brick | $ 20 sq. ft. |
| Barn—good construction | $ 8 sq. ft. |
| Barn—average construction | $ 5 sq. ft. |
| Barn—poor construction | $ 2 sq. ft. |

Although Barrett stated that Carlisle Moore, a supervisor with the technical support division of the Kentucky Department of Property Taxation, supplied her with this formula, Mr. Moore testified that he had not, and that the acceptable method for appraisal is comparable sales, or market value. If that is not possible, such as in the case of a factory or shopping mall, a cost analysis or income approach is used.

As for the "unmapped" areas, Barrett testified that they were "carryovers" from 1985, and were not reassessed. However, if she became aware of any new improvements in that area, she viewed it personally and then reappraised the property.

Monte Hollon is a real estate broker and has been a member of the National Association of Real Estate Appraisers for 26 years. He testified that he has been familiar with the real estate values in the Owsley and Lee County areas and has conducted thousands of appraisals. He stated that studies by the University of Kentucky Real Estate Research Center show that in the past three to five years property values have decreased in Owsley County and that the market is soft. The formula utilized by the PVA produces a value that greatly exceeds the fair market value of the property.

In *Dolan v. Land, supra,* the PVA of Fayette County had assigned values to agricultural property based not on individual value but on general averages. The Court held that while a mechanical formula may be used as an aid to valuation, in this case it failed to value property on the basis of uniform standards and did not result in a tax equally burdensome on all farm taxpayers. The individual characteristics of each farm must be taken into account. Although the process of making a fair assessment is not easy, difficulty cannot serve as a justification from deviating from constitutional requirements.

In this case, Barrett admitted that general sales data must not have been available and therefore was not used in the mapped areas. Although optional methods of valuation may be considered, the Constitution

requires uniformity of standard of assessment. *Parrent v. Fannin*, Ky., 616 S.W.2d 501 (1981). *Layson v. Brady*, Ky. App., 576 S.W.2d 223 (1979). The property must be assessed at its fair cash value. *Borders v. Cain*, Ky., 252 S.W.2d 903 (1954). KRS 132.450. Kentucky Constitution §§ 172 and 172A.

Finally, it is maintained that the Commonwealth is not liable for attorney fees or costs of the appellees. Under CR 54.04, costs against the Commonwealth, its officers, and agencies shall be imposed only to the extent required by law. KRS 453.010 provides:

> (1) No judgment for costs shall be rendered against the Commonwealth in any action prosecuted by or against the Commonwealth in its own right, unless specifically provided by statute; provided, however, that in any civil action filed in any court of competent jurisdiction by or against the Commonwealth of Kentucky, the costs may be paid by the Commonwealth when such costs are approved and allowed by the judge of the court in which the case was filed. Costs shall not exceed the fees allowed for similar services in other civil actions.

Appellants' reference to *Dept. of Revenue v. D & W Auto Supply, Inc.*, Ky.App., 614 S.W.2d 542 (1981) is to no avail, as that case was overruled by *Commonwealth Nat. Resources v. Stearns Coal & Lumber Co.*, Ky., 678 S.W.2d 378 (1984).

Appellants take issue that no notice to the class was given by appellees as required by KRS 412.070. That statute provides that in actions for the recovery of money or property which has been improperly or illegally collected, if one or more of the parties has prosecuted for the benefit of others interested with him, the court shall allow his costs and necessary expenses and his attorney reasonable compensation. The notice requirement may be fulfilled by advertisement pursuant to KRS Chapter 424.

With respect to the attorney fees, a review of the final judgment reveals that the trial court did not award attorney fees to be paid by the Commonwealth in addition to the refunds to appellees. Pursuant to KRS 412.070, the fees were ordered to be prorated and paid out of the refunds or credits obtained.

Accordingly, the judgments of the Owsley Circuit Court, entered October 7, 1988 and February 3, 1989, are affirmed."

All sitting. All concur.