**CITY OF PADUCAH, Kentucky; McCracken County, Kentucky; Board of Education of Paducah Independent School District; Board of Education of McCracken County School District; Paducah Junior College Municipal College Support District; Western Kentucky Regional Mental Health–Mental Retardation Board, Inc.; Paducah–McCracken County Health Department; McCracken County Extension District; Martha Nell Bradford, McCracken County Court Clerk; Howard Walker, Sheriff of McCracken County, Appellants,**

v.

**T.C.B., INC.; Tommy Blair Pontiac, Inc.; Chuck Mullen Olds–Nissan, Inc.; Allan Rhodes, Inc.; Paducah Ford, Inc.; Royal Oaks Chevrolet–Cadillac, Inc., Appellees.**

**No. 90–CA–1772–MR.**

Court of Appeals of Kentucky.

Oct. 11, 1991.

James V. Kerley, Denton & Keuler, Paducah, for appellants.

William E. Scent, Scent & Scent, P.S.C., Paducah, for appellees.

Dandridge F. Walton, David H. Vance, Alagia, Day, Marshall, Mintmire & Chauvin, Frankfort, for amicus curiae, Kentucky Auto. Dealers Ass'n.

Before LESTER, C.J., and DYCHE and HUDDLESTON, JJ.

LESTER, Chief Judge.

This is an appeal from a judgment entered upon findings of fact and conclusions of law enjoining appellants from collecting taxes on new and previously unregistered used motor vehicles pursuant to KRS 132.-020(11) and 132.220 as opposed to the method of taxation provided for in KRS 132.487.

■ Much of this appeal is reminiscent of *Kling v. Geary*, Ky., 667 S.W.2d 379 (1984), but we are presented with slightly different terms, such as improper legislative "classification" in lieu of "special legislation" and a theory of misclassification among "merchants." The arguments presented here, as well as in a myriad of other cases against unreasonable legislative classifications, find these bases in the equal protection clauses of the state and federal constitutions. However, commencing as long ago as 1889, most of the contentions failed as we attempted to point out in *Revenue Cabinet, Commonwealth of Kentucky v. Estate of Marshall*, Ky.App., 746 S.W.2d 408 (1988). We direct counsels' attention to the remarks of Mr. Justice Bradley in *The Bell's Gap Railroad Co. v. The Commonwealth of Pennsylvania*, 134 U.S. 232, 237, 10 S.Ct. 533, 535, 33 L.Ed. 892, 895 (1890), which are set forth at page 411 of *Estate of Marshall, supra*. We again quote Mr. Justice McKenna writing in *Magoun v. Illinois Trust & Savings Bank*, 170 U.S. 283, 296, 18 S.Ct. 594, 599, 42 L.Ed. 1037, 1043 (1898) to the effect:

There is therefore no precise application of the rule of reasonableness of classification, and the rule of equality permits many practical inequalities. And necessarily so. In a classification for governmental purposes there cannot be an exact exclusion or inclusion of persons and things.

Most appropriate to the case at bench is the principle set forth in litigation arising out of this jurisdiction and repeated by Mr. Justice Reed in *Madden v. Kentucky*, 309 U.S. 83, 60 S.Ct. 406, 84 L.Ed. 590, 593 (1940), upon the subject of:

I. Classification.—The broad discretion as to classification possessed by a legislature in the field of taxation has long been recognized. This Court fifty years ago concluded that "the Fourteenth Amendment was not intended to compel the State to adopt an iron rule of equal taxation," and the passage of time has only served to underscore the wisdom of that recognition of the large area of discretion which is needed by a legislature in formulating sound tax policies. Traditionally classification has been a device for fitting tax programs to local needs and usages in order to achieve an equitable distribution of the tax burden. It has, because of this, been pointed out that in taxation, even more than in other fields, legislatures possess the greatest freedom in classification. Since the members of a legislature necessarily enjoy a familiarity with local conditions which this Court cannot have, the presumption of constitutionality can be overcome only by the most explicit demonstration that a classification is a hostile and oppressive discrimination against particular persons and classes. The burden is on the one attacking the legislative arrangement to negative every conceivable basis which might support it.

As to how far classes and subclasses can be created, we invite review of KRS 139.-531 where we have a classification of horses below two years of age, as one element, as opposed to those in excess thereof for tax purposes.

In *Kling*, the court said "[t]hus, we uphold the classification of motor vehicles"

and in this cause we uphold the classification of "merchants" to use the term of appellants, but which we view as a classification of merchandise. We hasten to point out that at no time did appellants urge that the legislative enactment was "a hostile and oppressive discrimination," which is the test set forth in *Madden*.

■ Having determined that absent the element of arbitrariness, the legislature is free to provide various classes, especially in the field of taxation, we now turn to appellants' contention that the Motax is not the exclusive method of taxing new and previously unregistered used vehicles. It occurs to us that appellants overlook a very significant principle of our Kentucky Constitutional Law, which is that they have no inherent right to levy a tax on anything unless so empowered by the General Assembly, Kentucky Constitution § 171. It does not strain jurisprudential logic to point out that if the Legislature does extend the privilege of the levy to governmental subdivisions, then it can tell them in what manner and at what time they can do so. With this in mind, we now turn to that enactment which we believe best expresses exactly what the General Assembly intended to accomplish with relation to the Motax, which we find in KRS 132.487(1):

(1) The cabinet shall develop and administer a centralized ad valorem tax system for all motor vehicles as defined in KRS 186.010. This system shall be designed to allow the collection of state, county, city, urban-county government, school, and special taxing district ad valorem taxes due on each motor vehicle at the time of registration of the motor vehicle by the party charged with issuing such registration. The cabinet shall supervise and instruct the property valuation administrators and other officials with respect to their duties in relation to this system.

Noteworthy is the fact that a "centralized" system would be provided for ad valorem taxes on motor vehicles, the same being true for tangible and intangible property, KRS 132.486, as well as motorboats, KRS

132.488. Moreover, the subject statute classified motor vehicles separately for levy and collection of the tax at the time of registration as opposed to some other annual date. The crux of appellants' position is that the Legislature was powerless to do so. They say:

> The unfortunate result of the enactment [referring to the Motax] of the legislation was that it has been interpreted to remove those vehicles in a merchant's inventory as of January 1 from the ad valorem tax system. This was not the intent of the legislation. The legislation was intended to apply to vehicles *within the system.* Until the vehicle has been registered, it is not in the system at all. The end result of the legislation has been that it has increased collection of property taxes on all vehicles within the system while at the same time eliminating collection of taxes on those vehicles which are in a merchant's inventory as of the assessment date.

> Until the recent enactments in 1990, KRS 132.200 did not prohibit local taxing authorities from taxing automobiles held for sale but never registered in the Commonwealth of Kentucky. The General Assembly has never prohibited such taxes.

Our answer to the foregoing is that we consider the legislative intent as being clear on the face of the statute in that no tax is to be levied on the vehicles until they are registered and, if this resulted in eliminating the taxation of those that are in inventory as of the assessment date, then so be it because the General Assembly has provided an alternative time of assessment. The fact that until 1990 the Legislature never prohibited the taxing of unregistered vehicles pursuant to KRS 132.200 does not mean that it could not do so. In conclusion, we need go no farther than the opinion of Judge Graham speaking through his well-reasoned opinion in *Kentucky Automobile Dealers Association, Inc. v. Revenue Cabinet, Commonwealth of Kentucky,* No. 85–CI–55, upon the docket of the Franklin Circuit Court, July 8, 1987, to the effect:

The Motax system has been held constitutional and the separate and distinct classification of motor vehicles created by the General Assembly has been sanctioned by both the legislature and the Supreme Court.

■ The next attack upon the taxing scheme is that it is unconstitutional in that it exempts certain vehicles from the levy relying on Kentucky Constitution § 171 in that to use the words of appellants, "Motax exempts vehicles from inventory taxation." In *Kling,* the appellants urged that "it [Motax] is unconstitutional in its application, as automobile dealers are exempt from paying the tax, ..." Again, Kentucky Constitution § 171 was employed as well as § 59(15). To this the *Kling* court replied:

> The three statutes cited above from KRS Chapter 186A do, in fact, exempt dealers who hold vehicles for resale from payment of the tax. However, this is not a "halving" of a classification, as prohibited by *Schoo v. Rose, supra,* [Ky., 270 S.W.2d 940 (1954)], but is only a method of fixing the time and the person responsible for payment of the ad valorem tax on all motor vehicles—to-wit, the purchaser of the vehicle at the time the vehicle is registered for use upon the highway. It is payable by all persons, including an individual or a dealer, who intend to operate the vehicle on the highways of this state [KRS 186A.070; KRS 186A.120(3)(b)].

*Kling,* at p. 383.

And as an ultimate conclusion, it was said in *Kling:*

> The Constitution of Kentucky, pursuant to § 171, empowers the General Assembly to divide property into classes and to determine what class or classes shall be subject to local taxation. § 171 further mandates uniformity upon all property of the same class. It is our opinion that the legislation here challenged meets all constitutional requirements.

*Kling,* at p. 384.

We are not unmindful of the examples appellants relate as to instances of where the

taxes upon certain vehicles could be avoided, but these do not provide sufficient legal justification for declaring the statute unconstitutional, especially in light of the Supreme Court's opinion in *Kling,* for we see distinctions in these appellants' approach to the constitutional issues from those in *Kling,* but they are distinctions without significant differences.

It is next argued that the tax burden is imposed upon the wrong party, to-wit, the purchaser. Rather than reinvent the wheel, we believe this position was resolved in *Kling* and we decline to address it further.

■ We now turn to the contention that appellants were entitled to a declaration, based upon their counterclaims, that taxes were due for the years 1984 through 1988. This issue was best resolved by the circuit court when it said:

> Concerning the respective counter-claims filed by the defendants seeking to have this Court direct the assessment of ad valorem property taxes on the plaintiffs' new and unregistered used motor vehicles for the assessment years 1985–1988, the Court concludes, after examining the applicable statutes providing for the assessment and collection of omitted tangible personal property taxes, that the Circuit Court is involved in that statutory scheme only in an appellate capacity; and that this Court has no power or authority to entertain original actions for the assessment of omitted tangible personal properties from ad valorem taxation, or to increase assessments previously made on tangible personal properties for ad valorem taxation. *Property Valuation Adm. v. Ben Schore,* Ky.App., 736 S.W.2d 29 (1987).

We agree.

The judgment is affirmed.

DYCHE, J., concurs.

HUDDLESTON, J., concurs in result only.