**Herschel ST. LEDGER, et al., Appellants/Cross-Appellees,**

v.

**COMMONWEALTH of Kentucky, REVENUE CABINET, et al., Appellees/Cross-Appellants.**

Nos. 94-SC-468-DG, 94-SC-875-DG.

Supreme Court of Kentucky.

Jan. 30, 1997.

As Amended Jan. 31, 1997.

As Modified on Denial of Rehearing April 24, 1997.

D. Randall Gibson, Kenneth S. Handmaker, Augustus S. Herbert, Middleton & Reutlinger, Louisville, for Appellants/Cross–Appellees.

Charles S. Cassis, Stephen R. Schmidt, Brown, Todd & Heyburn, Louisville, Jennifer

Sartor Smart, Revenue Cabinet, Division of Legal Services, Frankfort, for Appellees/Cross–Appellants.

Jeffrey J. Yost, Stanton L. Cave, Jackson & Kelly, Lexington, for Amicus Curiae Greater Lexington Chamber of Commerce.

Thomas A. Brown, Mark F. Sommer, Greenebaum, Doll & McDonald, Louisville, for Amicus Curiae Kentucky Chamber of Commerce.

STEPHENS, Chief Justice.

## I. BACKGROUND

This case comes before our Court for a second time, the United States Supreme Court having vacated our judgment in *St. Ledger v. Commonwealth*, Ky., 912 S.W.2d 34 (1995) [hereinafter *St. Ledger*], and remanded the case to this Court for further consideration in light of *Fulton Corp. v. Faulkner*, 516 U.S. ——, 116 S.Ct. 848, 133 L.Ed.2d 796 (1996), a case decided subsequent to our opinion. While we believe that our original decision was correct under the law as it stood at that time, we now recognize that *Fulton Corp.*'s abandonment of *Darnell v. Indiana*, 226 U.S. 390, 33 S.Ct. 120, 57 L.Ed. 267 (1912), brings about an entirely different result in this case with regard to KRS 136.030(1) [hereinafter Exemption Statute].

Our original decision in *St. Ledger* addressed the constitutionality of Kentucky's ad valorem tax provisions. 912 S.W.2d at 34. Specifically, we examined KRS 132.020 [hereinafter Corporate Shares Tax], the alleged disparate taxation of in-state and out-of-state bank deposits under KRS 132.030 [hereinafter Bank Deposits Tax], and the Exemption ·Statute, a tax exemption for shareholders of stock in corporations which paid taxes to this State on at least 75% of their total property. *Id.* at 37.

En route to this Court, the Jefferson Circuit Court determined that the Exemption Statute was "unenforceable as written," and, as a result, did not reach the constitutionality

of that statute. *Id.* As to the Bank Deposits Tax, the court concluded that it violated the Commerce Clause and was unconstitutional. *Id.* The Court of Appeals subsequently reversed, finding the Exemption Statute enforceable and the Corporate Shares Tax and the Bank Deposits Tax constitutionally valid: the Corporate Shares Tax under a "compensatory tax" theory and the Bank Deposits Tax under the rationale that the bank did not fall within the parameters of interstate commerce. *Id.* Moreover, the Court of Appeals held that the entire intangibles tax scheme did not violate either the Equal Protection Clause of the United States Constitution or Section 3 of Kentucky's Constitution. *Id.*

On appeal in this Court, we held that: (1) KRS 132.030's taxation of out-of-state bank deposits at a greater rate than in-state deposits violated the Commerce Clause and was unconstitutional, and (2) according to *Darnell v. Indiana, supra*, the Exemption Statute, KRS 136.030(1), did not violate the Commerce Clause. Subsequent to our decision, appellants petitioned for, and were granted, a Writ of Certiorari from the United States Supreme Court [hereinafter Supreme Court]. As previously mentioned, the Supreme Court vacated our judgment and remanded the case for a decision in light of *Fulton Corp., supra*.

*Fulton Corp.* involved North Carolina's levy of an intangibles tax on a fraction of the value of corporate stock owned by state residents inversely proportional to the corporation's exposure to the State's income tax. 516 U.S. at ——, 116 S.Ct. at 852. Fulton Corporation, a North Carolina Company, filed a state-court action seeking a declaratory judgment that the tax violated the Commerce Clause of the United States Constitution and that it was entitled to a refund of the 1990 tax it had paid on stock it owned in out-of-state corporations that did only part or none of their business within the State. *Id.* at —— ——, 116 S.Ct. at 852–53. The North Carolina Supreme Court held that under *Darnell, supra*, the tax scheme imposed a valid compensatory tax. *Id.* Furthermore, the court found the intangibles tax imposed

less of a burden on interstate commerce than the corporate income tax placed on intrastate commerce. *Id.*

Reversing the North Carolina Supreme Court, a unanimous Supreme Court held that the intangibles tax levied in North Carolina discriminated against interstate commerce, thus violating the Commerce Clause. *Id.* at ——, 116 S.Ct. at 848. Relying on *Associated Industries of Missouri v. Lohman,* 511 U.S. 641, 114 S.Ct. 1815, 128 L.Ed.2d 639 (1994), the Court asserted that a racially discriminatory tax may survive Commerce Clause scrutiny if it is a truly " 'compensatory tax' designed simply to make interstate commerce bear a burden already borne by intrastate commerce." *Id.* at ——, 116 S.Ct. at 853. The Supreme Court went on to state that laws that discriminate against interstate commerce on their face are "virtually per se invalid." *Id.* at ——, 116 S.Ct. at 854 (citing *Oregon Waste Systems, Inc. v. Department of Environmental Quality of Oregon,* 511 U.S. 93, 114 S.Ct. 1345, 128 L.Ed.2d 13 (1994)).

In its examination of North Carolina's tax, the Supreme Court determined that the tax was clearly facially discriminatory and, therefore, must be analyzed under the three prongs of *Oregon Waste, supra,* to determine if it passed constitutional muster. *Id.* at ——, 116 S.Ct. at 854. Ultimately, the Supreme Court found the tax unconstitutional as it failed to meet any of the *Oregon Waste* requirements. *Id.* at —— —— ——, 116 S.Ct. at 855–60.

Finally, and of critical importance to the case at bar, the Supreme Court in *Fulton Corp.* asserted that *Darnell,* "should be viewed primarily as one of equal protection, despite the fact that Indiana's shareholder tax was challenged under both the Equal Protection and Commerce Clauses." *Id.* In that respect, the Supreme Court held that *Darnell* had been bypassed by later Commerce Clause decisions, namely, *Oregon Waste,* which require "justifications for discriminatory restrictions on commerce [to] pass the strictest scrutiny." *Id.*

## II. ISSUES

The Revenue Cabinet has suggested in prior pleadings that because this Court's decision in *St. Ledger* was vacated in its entirety by the Supreme Court, the Bank Deposits Tax is "fair game," once again. This Court notes, however, that we reaffirmed our holding concerning the Bank Deposits Tax when we denied the Revenue Cabinet's Petition for Rehearing. Because the Revenue Cabinet failed to file a Cross–Petition for Writ of Certiorari with the United States Supreme Court concerning the Bank Deposits Tax and because the Revenue Cabinet effectively waived this issue by failing to address it in the action before this Court, we will not concern ourselves with the invalidity of the Bank Deposits Tax.

Furthermore, because both parties concede that *Fulton Corp., supra,* is controlling in this case and, consequently, the Exemption Statute created by KRS 136.030(1) cannot now pass Commerce Clause muster, this Court will not proceed to address that issue. Thus, the only issues left to be decided by this Court include: (1) whether this Court may properly sever the Corporate Shares Tax from the Exemption Statute; (2) if this Court cannot sever the two statutes, for what length of time are refunds available to taxpayers; and (3) whether taxpayers are entitled to their costs and attorney's fees.

## III. ARE THE CORPORATE SHARES TAX AND EXEMPTION STATUTE SEVERABLE?

The Revenue Cabinet argues that prospectively, all shares of corporate stock owned by Kentucky residents must be taxed at the rate of $.25 per $100 of value under KRS 132.020. They assert that there is nothing discriminatory about this method of taxation and that without KRS 136.030(1)'s exemption, Kentucky's ad valorem taxation of shares would be nondiscriminatory. Moreover, the Revenue Cabinet maintains that a judicial declaration of total exemption is prohibited by the explicit directives of Ky. Const. §§ 3, 170, 172, and 174, which require all property to be

taxed unless exempted in our Constitution. Specifically, the Revenue Cabinet argues that in both *Gillis v. Yount*, Ky., 748 S.W.2d 357 (1988), and *Yount v. Calvert*, Ky.App., 826 S.W.2d 833 (1991), dis. rev. denied (1992), Kentucky appellate courts, in voiding unconstitutional ad valorem tax rates, left undisturbed the general classifications of KRS 132.020. We disagree.

■ The Corporate Shares Tax under KRS 132.020 and the companion Exemption Statute under KRS 136.030(1) fit together as hand and glove. In interpreting this tax scheme, this Court has consistently recognized the Legislature's intention to avoid the double taxation of both a corporation and its shareholders. We addressed the dangers of double taxation in *Commonwealth v. Walsh's Trustee*, 133 Ky. 103, 117 S.W. 398, 399 (1909), a case involving an attempt to tax certain corporate stock, where we maintained:

> Throughout the whole scheme of taxation adopted by this state there is an evident purpose to avoid double taxation, not alone in not taxing the same property twice in the same year for the same purpose, but as well in not taxing the same thing, whatever its form, twice in the same year for the same purpose. Double taxation is recognized as oppressive, and, where it is imposed upon some classes of property and not upon others, works an inequity that is fundamentally vicious. While the Constitution requires that all property shall be taxed (Const. § 171) and the General Assembly is prohibited from exempting any property by section 170 of the Constitution, it is not required that every phase of property shall be taxed. Nor is it. Nor has it ever been.

We later addressed the issue of whether stock owned by an individual was subject to the intangibles tax in *Commonwealth ex rel. Hopkins v. Fidelity Trust Co.*, 147 Ky. 77, 143 S.W. 1037 (1912). In that case we described the intangibles tax scheme as one in which:

> An orderly system of taxation is thus worked out, pursuant to legislative will;

for when we have noted the similarity of the obligations imposed, both upon domestic and foreign corporations ... and the exemptions of stockholders' liability for taxation upon their shares, we have followed a plain and reasonable deduction of the legislative intent, as expressed in its language, and as was doubtless its spirit.

*Id.* 143 S.W. at 1039.

■ Moreover, this Court has ruled that double taxation is against public policy and will be permitted only when the Legislature has clearly declared a contrary policy. *Kentucky Power Co. v. Revenue Cabinet*, Ky., 705 S.W.2d 904 (1985). As we determined in *George v. Scent*, Ky., 346 S.W.2d 784 (1961), statutes are to be construed in a manner which avoids double taxation in any form, even if the double taxation is the result of imposition of a tax by another governmental authority. Thus, by enacting the Exemption Statute, the Legislature clearly indicated that the double taxation of Kentucky's corporate shareholders should be avoided. Accordingly, we must consider the Corporate Shares Tax and the Exemption Statute inseparable, because the striking of the Exemption Statute would result in the taxation of not only corporations, but also their shareholders, a result in direct contravention of the expressed intent of the General Assembly.

Likewise, there is ample precedent for invalidating the entire Corporate Shares Tax scheme. In *Martin v. High Splint Coal Co.*, 268 Ky. 11, 103 S.W.2d 711, 712 (1937), involving an ad valorem tax scheme which exempted all real estate, the trial court held that the exemption was void, was in direct conflict with Ky. Const. § 170, and that when the exemption was eliminated from the tax scheme, it was obvious that the Legislature would not have enacted any part of the legislation without the exemption being retained therein. Basically, the trial court declared the entire act invalid. *Id.* 103 S.W.2d at 713. Affirming the trial court's decision, this Court stated:

> The last remaining question is, [w]hat effect does our holding have upon the rais-

ing of revenue for state purposes through ad valorem tax assessments and collections? It might be argued that the involved chapter 98 of the 1936 session should be held valid in all of its parts except the exempting of real estate, but if that course should be adopted, then the first section of the chapter (expressly declaring that real estate should be exempted from taxation ...) would, if permitted to stand, either exempt real estate from taxation for state purposes, or place a rate on it of 50 cents for each $100 valuation thereof, which latter result might follow from taking out of section 2 of that chapter the words "except real estate."

Clearly, the Legislature never contemplated such latter result if, and provided the exemption of real estate should be held invalid....

. . . .

As we have seen, practically the entire purpose of the enactment of the involved chapter 98 of the 1936 acts was to exempt real estate.... Under the governing rule, as so universally declared, it cannot be said with any degree of accuracy that the Legislature would have enacted any part of the chapter with the exception of real estate eliminated therefrom. The eliminated part being unconstitutional and void, as we have found, it follows that the entire chapter must be held invalid....

*Id.* at 717–18.

In addition, the Revenue Cabinet's reliance upon *Gillis v. Yount,* Ky., 748 S.W.2d 357 (1988), and *Yount v. Calvert,* Ky.App., 826 S.W.2d 833 (1991), is misplaced. The common issue under attack in those cases was the unconstitutional *classification* of property, principally under Ky. Const. § 171, not Commerce Clause violations, as in the present case.

For us to invalidate KRS 136.030(1) alone would, in essence, be a legislative act which exceeds this Court's authority under Sections 27 and 28 of Kentucky's Constitution. Those sections create three distinct branches of the state government and prevent one branch from exercising or usurping the power that properly belongs to another branch.

■ Furthermore, under Ky. Const. § 47, the Legislature is the only branch that has the constitutional authority to tax. This power cannot be exercised by either the executive or judicial branches. *Long Run Baptist Ass'n v. Louisville and Jefferson County Metropolitan Sewer Dist.,* Ky.App., 775 S.W.2d 520, 522 (1989); *City of Paducah v. T.C.B., Inc.,* Ky.App., 817 S.W.2d 234, 236 (1991). Thus, to invalidate only the Exemption Statute would be a form of judicial activism prohibited by our Constitution.

From the foregoing it is evident that the Exemption Statute and the Corporate Shares Tax are intertwined and interdependent; one would have not been adopted without the other. We recognized this result in our original decision in *St. Ledger* where we correctly stated:

> The determination that KRS 136.030(1) is valid necessarily prohibits this Court from finding that the *Commonwealth's ad valorem tax scheme, as a whole, is constitutionally invalid.*

912 S.W.2d at 43 (emphasis added). It is equally clear that the invalidation of KRS 136.030(1) alone, would subject previously exempt shareholders to the tax under KRS 132.020. Essentially, the Revenue Cabinet asks this Court to judicially enact a new tax by invalidating only the Exemption Statute. To do such would be a complete violation of the separation of powers doctrine set forth in Kentucky's Constitution. Indeed, for this Court to invalidate the Exemption Statute and to uphold the Corporate Tax Scheme would, in effect, be this Court delving into a realm our Constitution left squarely within the power of the Legislative Branch. Thus, we find the entire tax scheme, including both KRS 132.020 and KRS 136.030(1), invalid under *Fulton Corp., supra.*

## IV. FOR WHAT LENGTH OF TIME ARE REFUNDS AVAILABLE TO TAXPAYERS?

The Revenue Cabinet concedes that *Harper v. Virginia Dept. of Taxation,* 509 U.S.

86, 113 S.Ct. 2510, 125 L.Ed.2d 74 (1993), requires that the decision in *Fulton Corp., supra,* be applied retroactively to this case. Both parties further agree that *McKesson Corp. v. Florida Div. of Alcoholic Beverages and Tobacco,* 496 U.S. 18, 110 S.Ct. 2238, 110 L.Ed.2d 17 (1990), mandates that a state meet fundamental due process requirements under the Fourteenth Amendment and federal law when the Commerce Clause has been violated. Discussing the minimum relief a taxpayer must receive, the *McKesson* Court stated:

> The question before us is whether prospective relief, by itself, exhausts the requirements of federal law. The answer is no: if a State places a taxpayer under duress promptly to pay a tax when due and relegates him to a postpayment refund action in which he can challenge the tax's legality, the [D]ue Process Clause of the Fourteenth Amendment obligates the State to provide meaningful backward-looking relief to rectify any unconstitutional deprivation.

*Id.* at 31, 110 S.Ct. at 2247 (footnotes omitted).

KRS 134.590 also requires some type of refund under these circumstances as a matter of state law, independent of due process requirements. KRS 134.590(1) provides that when it appears to the appropriate agency of state government that money has been paid into the State Treasury for ad valorem taxes, when no taxes were due, or for taxes of any kind under a statute held to be unconstitutional, that agency must refund the money or cause it to be refunded. See *Revenue Cabinet v. Gossum,* Ky., 887 S.W.2d 329, 333–34 (1994). Accordingly, appellants are entitled to a refund, and we must now determine for what length of time a refund is available.

■ Appellants assert that under the doctrine of issue preclusion, this Court must reaffirm the applicable remedy for collection of an unconstitutional tax as set forth in our original opinion in *St. Ledger, supra.* Appellants cite to *Inman v. Inman,* Ky., 648 S.W.2d 847, 849 (1982), as support for their

contention. *Inman* described the "law of the case" rule under which a court is bound on subsequent appeal by its prior decisions on a former appeal and applies to the determination of questions of law. *Id.*

While in *St. Ledger,* we did agree with the trial court that the taxpayers were entitled to apply for refunds of taxes for the preceding two-year period pursuant to KRS 134.590, the law of the case doctrine is not applicable in the present procedural posture of this case, as this is not a subsequent appeal of the same case. Furthermore, nothing in the law of the case doctrine in any way prevents reexamination of the applicability of the legal principles applied on one constitutional challenge (Bank Deposits Tax) to a separate legal challenge to a different tax (the Corporate Shares Tax and the Exemption Statute). The material circumstances and issues presented by this different tax make the law of the case doctrine inapplicable and, thus, this Court is free to apply the law as required by the circumstances presented by the challenge to the tax.

■ Moreover, appellants argue that, in general, KRS 134.590 speaks in terms of filing an application for a refund and that KRS 134.590(6), not KRS 134.590(2), is the appropriate section to apply in this case. Specifically, appellants contend that *Griggs v. Dolan,* Ky., 759 S.W.2d 593 (1988), is "crystal clear" that the filing of a lawsuit challenging the constitutionality of a taxing statute either constitutes the filing of an application or preserves the right of the taxpayer to file an application for a refund of taxes paid within two years prior to the filing date of that litigation. *Id.* at 596.

Appellants assert *Barrett v. Reynolds,* Ky., 817 S.W.2d 439 (1991), which followed and relied upon our holding in *Griggs,* as upholding the concept that KRS 134.590(6) applies to the length of time for a refund and stands for the proposition that:

> [I]f a suit challenging the method of assessment is pending, the time for making the claim for refund, either against the

Commonwealth or against other taxing agencies, does not expire until two years after the date the litigation has been finally determined by the courts.

*Id.* at 441. In addition, appellants argue that neither *Griggs* nor *Barrett* made any distinction between the amount of refund due and the taxing authority involved. We disagree.

Contrary to appellants' arguments, *Barrett* and *Griggs* did not hold that the time for filing a claim for refund against the Commonwealth is two years from the date of the final determination of the litigation for taxes challenged as unconstitutional. First, appellants' contention concerning *Barrett* is pure dictum insofar as it relates to the Commonwealth, given that no question as to refunds by the Commonwealth was presented in that case. *Barrett,* 817 S.W.2d at 439. Additionally, both *Barrett* and *Griggs* are distinguishable from the present case in that those cases involved situations in which a "suit attacking the constitutionality of *assessments* [was] pending." *Id.* (emphasis added).

The present case, however, does not involve a challenge to the constitutionality of an assessment; it challenges the constitutionality of an exemption statute, an ad valorem statute, and involves the Revenue Cabinet. There is no statement in either *Barrett* or *Griggs* that a suit against only the Revenue Cabinet for a declaration of the unconstitutionality of an ad valorem tax statute, rather than an assessment, would come under KRS 134.590(6). Thus, the present case clearly falls within KRS 134.590(1)–(2), which require the filing of a refund application within two years of payment, not two years from the date of the filing of the lawsuit.

Likewise, *Griggs, supra,* merely quoted and relied on *Board of Educ. of Fayette County v. Taulbee,* Ky., 706 S.W.2d 827 (1986), which supports the proposition that the controlling statute in cases such as· these is KRS 134.590(2). In *Taulbee,* this Court clearly recognized that KRS 134.590(6) applies only to local taxing districts, asserting:

It appears that the legislators made a distinction between state and local taxing

districts. Only the local taxing districts have authority to refund both overpayment of ad valorem and unconstitutional taxes. The state will only refund unconstitutional taxes or taxes paid when no tax is due.

KRS 134.590(1) applies to taxes paid under a statute held unconstitutional. Obviously, the only way a statute can be held unconstitutional is when a court makes such a decision. The filing of a lawsuit does not automatically entitle a plaintiff to a refund without further action. KRS 134.590(6) covers this situation as to local tax districts ·when it permits an application for refund to be made within two years from the date the amount due if finally determined.

*Id.* at 829.

Similarly, in the more recent case of *Revenue Cabinet v. Gossum,* Ky., 887 S.W.2d 329 (1994), this Court recognized that by enacting a two-year statute of limitations, Kentucky quite properly "has availed itself of a procedural protection minimizing the disruptive effect of a tax scheme's invalidation." *Id.* at 335. In fact, our opinion in *Gossum,* citing *McKesson, supra,* recognized both the purpose and the justification for the shorter statute of limitations in KRS 134.590(2) applicable to unconstitutional tax schemes. Specifically, we stated:

We determine that Kentucky, by its refund statute, applicable to taxing statutes declared unconstitutional, has availed itself of a procedural protection minimizing the disruptive effect of a tax scheme's invalidation. Inclusively, the legislature has provided, by statute a relatively short period · of limitations which is protective to a state's fiscal security when weighed against the state's obligation to provide meaningful relief for its unconstitutional taxation.

A reasonable basis does exist for a distinction sufficient to create justification for the separate classification of a four or two year statute of limitations ... This case stands as a clear example of the distinction that the state legislature has drawn be-

tween refunds of taxes paid under a constitutional statute which is rationally related to a legitimate state interest. Revenue Cabinet acknowledges that refunds under a constitutional statute should normally involve individual taxpayers and nominal payments, whereas refunds under an unconstitutional statute will involve multitudes of taxpayers and millions of dollars.

*McKesson, supra*, authorizes the conclusion that the two-year statute of limitations (KRS 134.590) is not violative of constitutional standards. Refunds shall be made to those [taxpayers] whose application for same was made within two years from the time payment was made.

*Id.* at 335 (citations omitted).

We further noted that the history of KRS 134.590 establishes that KRS 134.590(2) is the subsection applicable to the question of when an application for a refund has been filed. *Id.* Furthermore, in *Gossum*, regarding an issue almost identical to the one in the present case, we reiterated our position in *Taulbee*:

The retirees maintain that KRS 134.590(6) extends the statute of limitations to two years after final resolution of this case. We attach no merit to this argument as KRS 134.590, commencing with (3) through (6), applies to refunds of local ad valorem taxes only, and was the result of an amendment affected by SB 287 of the regular legislative session of 1980, wherein no change was made in the statutory requirements for refunds of taxes paid under a statute held unconstitutional. It appears, additionally, that the amount of taxes due is not an item of the litigation. It is an issue of all of the tax or none of the tax. Also see *Board of Education of Fayette County v. Taulbee*, Ky., 706 S.W.2d 827 (1986), which enumerates three taxing districts, namely the Department of Revenue, the Board of Education, and the Urban County Government as distinct governmental and taxing entities. The case distinguishes that the Department of Revenue shall refund under KRS 134.590(1) and

that sections (3), (4), (5), and (6) apply to the refund of all other taxing districts.

*Gossum*, 887 S.W.2d at 334–35. Thus, *Gossum* clearly held that KRS 134.590(6) applies only to refund claims against local taxing districts and not to refunds against the State.

Also without foundation, appellants assert that the two-year statute of limitations in KRS 134.590(2) violates the due process principles enunciated in *McKesson, supra*, by depriving them of any "meaningful backward-looking relief." As *Gossum, supra*, notes, application of the two-year statute of limitations is consistent with *McKesson* because the *McKesson* court explicitly approved "enforcing relatively short statutes of limitations applicable to refund actions." *Gossum*, 887 S.W.2d at 331. Basically, in *Gossum* we adopted the rationale for such actions expressed in *McKesson* that, "such procedural measures would sufficiently protect States' fiscal security when weighed against their obligation to provide meaningful relief for their unconstitutional taxation." *Id.* Thus, a short refund period is constitutionally sufficient, and, by adopting one, Kentucky quite properly "has availed itself of a procedural protection minimizing the disruptive effect of a tax scheme's invalidation." *Id.*

It should also be noted that a lawsuit is an application to a judicial body for some type of relief. Clearly, the filing of such an action does not constitute the filing of an application for a refund for the purposes of the refund statute. As we distinguished in *Taulbee, supra*, and *Gossum, supra*, the Department of Revenue must provide refunds for the state under KRS 134.590(2), while KRS 134.590(6) strictly applies to refunds from local tax districts. Accordingly, unlike the provisions for determining the final amount due where there is a dispute as to the calculation or assessment of local ad valorem taxes, there is no tolling provision in KRS 134.590(2) for refunds by the State of an unconstitutional tax. The plain meaning of KRS 134.590(2) makes the two-year period after the filing of an application for a tax refund, not the filing

of a lawsuit, the appropriate period of limitations on appellants' recovery.

## V. ARE TAXPAYERS ENTITLED TO COSTS AND ATTORNEY'S FEES?

Finally, we address whether an award of attorney's fees is mandated under 42 USC § 1988 or KRS 453.260. Appellants argue that because this Court granted them relief for invalidating the Bank Deposits Tax in *St. Ledger*, they are now entitled to no less favorable treatment with respect to the Corporate Shares Tax scheme. Further, appellants maintain that any reliance on *Schmitt Furniture Co. v. Commonwealth*, Ky., 722 S.W.2d 889 (1987), a case primarily based on KRS 453.260(1)(a), not KRS 453.260(1)(b), is misplaced and that *Gillis v. Yount, supra,* and *Revenue Cabinet v. Barbour,* Ky.App., 836 S.W.2d 418 (1992), are controlling. We disagree.

In *Barbour,* both taxpayer classes filed a motion for, and were awarded, costs and attorney's fees by the trial court due to the unconstitutionality of a tax on unmined coal. *Id.* at 423. In *Barbour* we noted:

> We cannot deny that an agency cannot assume a statute unconstitutional and must, therefore, continue to enforce it and defend it unless a decision of a court holds otherwise. Thus, we recognize a certain injustice in penalizing the state for what its agency has a legal duty to do.

*Id.*

■ The recent decision of the Supreme Court in *National Private Truck Council, Inc. v. Oklahoma Tax Comm'n,* 515 U.S. 582, 115 S.Ct. 2351, 132 L.Ed.2d 509 (1995), clearly precludes an award of attorney's fees under 42 USC §§ 1983 and 1988 when an adequate remedy under state law is available. *National Private Truck Council,* further indicates that a declaratory judgment action provides a plain, speedy, and efficient remedy. *Id.*

■ Appellants had an adequate remedy under Kentucky law for their objections to the tax levied upon them: (1) a declaratory relief action in circuit court where all constitutional challenges to the two ad valorem taxes could be litigated fully, or (2) the filing of an application for a refund from the State. The *National Private Truck Council* decision confirms this Court's holding in *Gossum, supra,* that § 1988 claims challenging the validity of state taxes in courts are barred when an adequate state remedy is available. *Id.* As in *Gossum,* appellants in the case *sub judice* had an adequate remedy for their claims, precluding a § 1988 award of attorney's fees.

■ Furthermore, KRS 453.260(2), as we upheld in *Schmitt Furniture Co. v. Commonwealth, supra,* provides that a party asking for an award of attorney's fees and costs against the Commonwealth in a tax case must show in the application for fees and costs "that the Commonwealth acted without substantial justification." *Id.* at 891. *Schmitt Furniture Co.* explained that under KRS 453.260(2)(d), attorney's fees should not be awarded where the Revenue Cabinet's position had a reasonable basis in the law and that its position will not be presumed to have been not substantially justified simply because it lost the case. *Id.* Additionally, with respect to KRS 453.260(2)(c), we determined that the court may deny an award of fees and costs for two reasons: (1) if "the position of the Commonwealth was substantially justified," or (2) "the reason that the party other than the Commonwealth has prevailed is an intervening change in the applicable ... case law." *Id.* at 890–91.

Here, it is clear that appellants cannot carry the burden of proving the required allegation that the Commonwealth acted without substantial justification. Rather, it is apparent that KRS 453.260(2)(c) has been satisfied. But for the Supreme Court's abandonment of *Darnell v. Indiana,* 226 U.S. 390, 33 S.Ct. 120, 57 L.Ed. 267 (1912) in *Fulton Corp. v. Faulkner,* 516 U.S. ——, 116 S.Ct. 848, 133 L.Ed.2d 796 (1996), the Revenue Cabinet would have prevailed on the constitutionality of the Exemption Statute under

the Commerce Clause. Indeed, the Revenue Cabinet did prevail on this issue in our original decision in *St. Ledger, supra.* Because the Revenue Cabinet's reliance on *Darnell, supra,* was substantially justified, and because the awarding of attorney's fees is within this Court's discretion, appellants' claim for costs and attorney's fees is denied.

## VI. CONCLUSION

In conclusion, we find KRS 136.030(1) invalid in light of *Fulton Corp. v. Faulkner,* 516 U.S. ——, 116 S.Ct. 848, 133 L.Ed.2d 796 (1996), and that this Court cannot properly sever its companion, KRS 132.020, from it. Furthermore, because appellants have paid a tax that is now determined to be unconstitutional, appellants are entitled to a refund under KRS 134.590(2) for two years prior to the filing of a refund application for the bank Deposits Tax or the Corporate Shares Tax.

COOPER, LAMBERT, and JOHNSTONE, JJ., concur.

All concur as to Sub–Section III.

GRAVES, J., dissents in part as to Sub–Sections IV and V, and files a separate dissenting opinion.

STUMBO and WINTERSHEIMER, JJ., join in this dissenting opinion.

GRAVES, Justice, concurring in part and dissenting in part.

I concur in part and dissent in part. I dissent from so much of the opinion that limits the recovery to two years from the date of filing an application for tax refund as opposed to two years from the date of the filing of the suit. I take this position because limiting the period creates two classes and it is likely the more wealthy, better informed, and better publicly served class will receive refunds back to 1988. However, unsophisticated, intangible property owners, as described by Justice Wintersheimer during oral argument, will be limited to two years. The opinion will be perceived as giving greater protection of the law to those who can afford it. This will be perceived as a basic inequity that privileges the wealthy and penalizes the less fortunate. Also, all Kentucky taxpayers will be billed to repay a small privileged class.

If a private citizen had behaved in such a confiscatory manner in appropriating under color of a law a constitutionally challenged entitlement, he would be arrested for failure to make required disposition of property. The state should behave in the same manner it mandates that its citizens behave. The revenue department continued to impose a tax after it had notice of its questionable constitutionality and then argues that the burden for seeking a refund should rest with the victimized taxpayer. It is obvious that the Commonwealth is using its superior position of power to an unfair advantage because if someone does not file a claim the Commonwealth will be able to keep some of what it forcibly and illegally took.

The blind persistence of the Revenue Cabinet, even after the decision in *Fulton Corp. v. Faulkner,* 516 U.S. ——, 116 S.Ct. 848, 133 L.Ed.2d 796 (1996), should not be rewarded. This matter should be remanded to the trial court for the determination of actual court costs and reasonable attorney fees. The period of refund should be extended until at least 1998. The two-year time limit as provided by the majority opinion is not the meaningful retroactive relief contemplated in *McKesson Corp. v. Division of Alcoholic Beverages,* 496 U.S. 18, 110 S.Ct. 2238, 110 L.Ed.2d 17 (1990). The taxpayers should have the right to file claims for refunds for taxes paid from July 26, 1988, through the date of judgment plus statutory interest.

WINTERSHEIMER, J., joins in this opinion concurring in part and dissenting in part.

STUMBO, J., joins only as to the limitations on refunds.