RENDERED: APRIL 28, 2023; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2022-CA-0185-MR

FRATERNAL ORDER OF POLICE,
LODGE #4 AND CHRISTOPHER
MORROW                                                                      APPELLANTS

|   | APPEAL FROM FAYETTE CIRCUIT COURT |
|---|---|
| v. | HONORABLE THOMAS L. TRAVIS, JUDGE |
|   | ACTION NO. 20-CI-01368 |

LEXINGTON-FAYETTE URBAN
COUNTY GOVERNMENT                                                     APPELLEE

OPINION
AFFIRMING

** ** ** ** **

BEFORE: CALDWELL, DIXON, AND TAYLOR, JUDGES.

CALDWELL, JUDGE: The Appellants, Fraternal Order of Police Lodge #4

("FOP") and Christopher Morrow ("Morrow"), appeal from the circuit court order

granting summary judgment in favor of the Lexington-Fayette Urban County

Government ("LFUCG") in a matter involving whether a collective bargaining

agreement is implicated. We affirm.

## FACTS

In 2017, Morrow was a police officer employed by LFUCG.  On April 17, 2017, a woman made a complaint to the police department that Morrow had sexually assaulted her.  A year later, and after he was indicted for rape in the first degree, the woman sued him for damages due to the alleged sexual misconduct.  The complaint alleged that Morrow was on duty and in uniform at the time of the assault.  It was later determined that he had taken a vacation day on the day the assault occurred and went to the woman's home after a medical appointment.  Morrow maintained that the sexual contact was consensual.  The FOP requested that LFUCG provide Morrow with representation to defend the civil case under a provision of a collective bargaining agreement ("CBA") which existed between the entities, and which required LFUCG to provide, in part, assistance to officers who are sued for tortious conduct alleged to have been committed while on duty.  LFUCG provided the representation but reserved the right to withdraw the representation and seek reimbursement for the costs thereof should it be determined that Morrow was not entitled to the assistance of LFUCG in his defense.

Morrow eventually entered a plea to official misconduct in the second degree.  LFUCG eventually settled the lawsuit filed against Morrow for $5,000.  Concurrently, FOP and Morrow filed a grievance against LFUCG, alleging that

that entity had indicated it would be withdrawing representation after Morrow admitted he was not on duty the day of the sexual encounter, which he continued to insist was consensual. The grievance was denied as prospective because LFUCG had not yet withdrawn responsibility for Morrow's legal representation in the civil matter. In accord with the terms of the CBA, Morrow and FOP requested arbitration, which was denied by LFUCG. They then filed a complaint in Fayette Circuit Court seeking to compel arbitration on the question of whether LFUCG had a duty to continue to provide representation to Morrow.

LFUCG answered the suit and counter-claimed, seeking a declaration that it had no duty to provide the representation as Morrow was not on duty at the time of the acts and the acts were intentional, and therefore not covered by the LFUCG self-insurance fund, which covered only accidental matters. LFUCG requested reimbursement of the amount spent defending Morrow against the suit. Competing motions for summary judgment were filed and the circuit court granted LFUCG's motion, finding that it had no responsibility to provide for Morrow's defense to the civil lawsuit and granting it the costs and fees it had expended in doing so. Morrow and FOP had moved for the dismissal of the counterclaim, arguing that the CBA required the parties to arbitrate the matter.

Morrow and FOP filed a motion to alter, amend, or vacate, which was denied. The circuit court did, however, submit to arbitration the question of

whether attorney's fees should be considered part of the "costs to defend" the suit as delineated in the CBA. The arbitrator determined that attorney's fees are included in such costs and thereafter the circuit court entered an order for the full amount LFUCG had requested. This appeal followed.

**STANDARD OF REVIEW**

An appellate court reviews the granting of motions to dismiss *de novo.* "Since a motion to dismiss for failure to state a claim upon which relief may be granted is a pure question of law, a reviewing court owes no deference to a trial court's determination; instead, an appellate court reviews the issue *de novo.*" *Fox v. Grayson*, 317 S.W.3d 1, 7 (Ky. 2010).

Similarly, motions for summary judgment are likewise reviewed by the appellate court with no deference to the trial court's legal determinations.

> The proper standard of review on appeal when a trial judge has granted a motion for summary judgment is whether the record, when examined in its entirety, shows there is "no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." CR 56.03. The trial judge must view the evidence in a light most favorable to the nonmoving party, resolving all doubts in its favor. *Spencer v. Estate of Spencer*, 313 S.W.3d 534, 537 (Ky. 2010) (quoting *Steelvest, Inc. v. Scansteel Service Center, Inc.*, 807 S.W.2d 476 (Ky. 1991)).

*Hammons v. Hammons*, 327 S.W.3d 444, 448 (Ky. 2010).

**ANALYSIS**

FOP and Morrow claim that the circuit court erred when it entered summary judgment in favor of LFUCG as, per the terms of the CBA, the parties were required to exhaust the remedies described therein before resorting to the courts. They further claim (1) the court erred in not dismissing the counterclaim filed by LFUCG for attorney's fees because such fees were subject to the CBA, and (2) LFUCG failed to specify in the counterclaim that they were seeking the costs and fees associated with defending Morrow in the civil suit, rather than simply seeking costs and fees to defend against the suit brought against it by FOP and Morrow. We will review each of the allegations of error in turn.

### 1. Applicability of the CBA

Primarily, Morrow and FOP argue that the circuit court erred in granting LFUCG summary judgment because the parties' conduct was controlled by the negotiated CBA, which required the parties to engage in the grievance and arbitration procedure outlined in the CBA.

In essence, FOP and Morrow argue that they have exhausted the remedies outlined in the CBA before filing suit concerning the question of whether LFUCG was obligated to cover the costs of Morrow's defense to the civil suit, but that LFUCG had not so exhausted. They insist that LFUCG argued below only that they should be entitled to reimbursement of litigation expenses involved in the

suit between it and Morrow and FOP, not for reimbursement of the expenses LFUCG forwarded for Morrow's defense. Therefore, they argue, since the question of the expenses LFUCG paid for Morrow's defense to the civil suit filed by his victim was not presented in the grievance, this Court should not address that matter, regardless of the fact the order of the circuit court granted LFUCG reimbursement of those expenses.

LFUCG points out that the suit brought by FOP and Morrow was premature in that, at the time the suit was instituted, it was providing for Morrow's defense to the civil suit and even paid the settlement amount on his behalf, all the while reserving the right to seek recompense should it be determined that it was not required to so provide. FOP and Morrow answer that they only filed suit when LFUCG refused to participate in arbitration and that the purpose of the suit was to enforce LFUCG's compliance with the CBA grievance procedure. We believe there was a sufficient controversy between the parties for the circuit court to adjudicate.

> In *Barrett v. Reynolds*, 817 S.W.2d 439, 441 (Ky. 1991), citing *Dravo v. Liberty Nat'l Bank & Trust Co.*, 267 S.W.2d 95 (Ky. 1954), the Supreme Court explained what an actual controversy is in relation to this statute: "An actual controversy for purposes of the declaratory judgment statute requires a controversy over present rights, duties and liabilities; it does not involve a question which is merely hypothetical or an answer which is no more than an advisory opinion."

*Lococo v. Kentucky Horse Racing Commission*, 483 S.W.3d 848, 851 (Ky. App. 2016), *overruled on other grounds by Estate of Benton by Marcum v. Currin*, 615 S.W.3d 34 (Ky. 2021).

The matter presented a question of interpretation of the CBA and a determination of the requirements of a party to that agreement, given the facts of the underlying proceeding against Morrow. We find that question was more than suitable for adjudication and did not present a hypothetical question or request an advisory opinion.

At its core, the question presented is this: is the determination whether the CBA applies a matter which must be determined per the terms of the contract, or can a court determine whether a question lies outside the parameters of the CBA and, if it so finds, rule on the merits?

We hold that the determination as to whether actions of a party to a CBA fall under conduct regulated by that agreement is a justiciable question that a circuit court has jurisdiction to determine. The grievance procedure must be followed to exhaust administrative remedies but does not restrict the parties' rights to access the courts. To wit, KRS[1] 67A.6908(3) expressly provides that any action for breach of a CBA between an urban-county government and a labor

---

[1] Kentucky Revised Statute.

organization representing law enforcement or other municipal employees may be brought in circuit court.  Further, Section 14 of the Constitution of Kentucky provides access to the courts for "every person for an injury done him in his lands, goods, person or reputation[.]"

In *AT & T Technologies, Inc. v. Communications Workers of America*, the United States Supreme Court summarized the principles established by a series of cases involving United Steel Workers against various manufacturing entities, known as the "Steelworkers Trilogy":[2]

> The first principle gleaned from the *Trilogy* is that arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit.
>
> . . . .
>
> The second rule, which follows inexorably from the first, is that the question of arbitrability – whether a collective-bargaining agreement creates a duty for the parties to arbitrate the particular grievance – is undeniably an issue for judicial determination.
>
> . . . .
>
> The third principle derived from our prior cases is that, in deciding whether the parties have agreed to

---

[2] *United Steel Workers of America v. American Mfg. Co.*, 363 U.S. 564, 80 S. Ct. 1343, 4 L. Ed. 2d 1403 (1960); *United Steel Workers of America v. Warrior and Gulf Navigation Co.*, 363 U.S. 574, 80 S. Ct. 1347, 4 L. Ed. 2d 1409 (1960); and *United Steel Workers of America v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 80 S. Ct. 1358, 4 L. Ed. 2d 1424 (1960) (collectively "The Steelworkers Trilogy").

submit a particular grievance to arbitration, a court is not to rule on the potential merits of the underlying claims.

. . . .

Finally, it has been established that where the contract contains an arbitration clause, there is a presumption of arbitrability in the sense that an order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage.

475 U.S. 643, 648-50, 106 S. Ct. 1415, 1418-19, 89 L. Ed. 2d 648 (1986) (internal quotation marks and brackets omitted).

Clearly, whether the point of contention between Morrow and LFUCG was required to be arbitrated per express terms of the CBA must be determined in the negative. The question of whether a dispute falls under the terms of the contract would not be questionable if the express terms included contemplation of such disagreement. Thus, the second principle is implicated – whether a particular issue falls under the grievance procedure of the agreement is a question for judicial determination. Then, if the court determines, as here, that the controversy is not subject to the grievance procedure for determination, the court may adjudge the question and determine the matter. Lastly, when an arbitration clause exists, as here, the contract should be interpreted, if possible, to require arbitration, and it should be so ordered.

The circuit court determined that the CBA was not implicated in the present case because Morrow's illegal activities occurred when he was off-duty, despite the allegation in the original civil complaint against him. Thus, the court went on to determine whether LFUCG was required to provide for Morrow's civil defense and found it was not per the terms of the self-insurance policy.[3] Having so determined, the circuit court sent to arbitration the question of the *amount* of the fees and costs and whether Section 19 of the CBA contemplated attorney's fees as part of the "cost to defend" an action against a party to the agreement. We find that this was unnecessary, in that if the circuit court determined that LFUCG was entitled to reimbursement under their reservation of rights for the costs expended to defend Morrow because his actions were not subject to the CBA as he was off duty at the time of his actions, the question of costs was not to be determined by the CBA. However, as LFUCG finds no fault with the ultimate award entered by the circuit court in accord with the arbitrator's determination, this question is not before us.

---

[3] Because the CBA was not implicated, the terms of LFUCG's self-insured policy to provide for damages incurred by it were implicated, and the circuit court interpreted the terms of the policy not to require payment by it because not only was Morrow not on duty at the time of the allegations, but he was accused of intentional acts, and the policy covered only accidental happenings.

## 2. Grant of Attorney's Fees

Morrow and FOP first argue that LFUCG did not specifically request the reimbursement of fees expended to defend Morrow in the civil suit and that, therefore, the court improperly ruled on a matter not properly before it. However, the circuit court *granted* Morrow and FOP's CR[4] 59.05 motion seeking to alter, amend, or vacate the court's grant of fees and submitted the matter to arbitration for the arbitrator to determine whether attorney's fees would even be considered "costs to defend" under the CBA. The arbitrator found that attorney's fees would be included but did not determine the question of whether they were proper under the CBA. LFUCG then requested that the court issue an order ordering Morrow to reimburse it for all costs and fees, including attorney's fees incurred in defending him in a civil suit arising from intentional conduct not within the scope of his employment. The court so granted.

We are not persuaded by Morrow and FOP's argument. LFUCG may not have specifically requested that it be granted costs and fees for the civil suit, but did ask for "any other relief to which they might be entitled." The question was litigated, and was the only question determined by CBA procedures and, therefore, Morrow and FOP had more than adequate opportunity to address the propriety of the request.

---

[4] Kentucky Rules of Civil Procedure.

-11-

Attorney's fees are recoverable if provided for under statutory authority or are expressly provided for in a contract between the parties. "As a rule, attorney's fees are not recoverable unless a specific contractual provision or statute provides otherwise." *Key v. Mariner Finance, LLC*, 617 S.W.3d 819, 823 (Ky. App. 2020) (citing *Seeger v. Lanham*, 542 S.W.3d 286, 295 (Ky. 2018)). The arbitrator found that the "costs to defend" language in the CBA included attorney's fees and found the fees requested by LFUCG to be reasonable. The circuit court followed the finding of the arbitrator and entered an order in LFUCG's favor. Further, the circuit court found that even were the CBA not controlling on the question, the grant of attorney's fees was proper, given LFUCG's reservation of rights when providing the expenses of his legal defense to the civil suit.[5] We find no error.

## CONCLUSION

We affirm the circuit court. We find that the CBA was not controlling of the question adjudged by the court, *i.e.*, whether the conduct of Morrow fell under the terms of the CBA such that any dispute between FOP/Morrow and LFUCG should first be considered pursuant to the grievance procedure outlined in

---

[5] "[A]n award of attorney fees is within the sound discretion of the trial court, and its decision will not be disturbed absent a finding of abuse of discretion." *Golden Foods, Inc v Louisville & Jefferson County Metropolitan Sewer Dist*, 240 S.W.3d 679, 683-84 (Ky. App. 2007).

the agreement. Having determined that Morrow's off-duty bad acts did not implicate the CBA, we find the court unnecessarily ordered the parties to an arbitrator to determine whether attorney's fees expended by LFUCG should be recoverable from Morrow. But, as LFUCG does not complain about the final order of the Fayette Circuit Court ordering the amount determined by the arbitrator, we affirm.

ALL CONCUR.

BRIEFS FOR APPELLANTS:

Scott A. Crosbie
Eric C. Eaton
Lexington, Kentucky

BRIEF FOR APPELLEE:

Barbara A. Kriz
Lexington, Kentucky